# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EFRAIM BARENBAUM, Derivatively on Behalf of Nominal Defendant FTE NETWORKS, INC., | Case No.  1:19-cv-5913 |
| Plaintiff, | |
| v. | |
| MICHAEL PALLESCHI, FRED SACRAMONE, JAMES SHIAH, CHRISTOPHER FERGUSON, LUISA INGARGIOLA, BRAD MITCHELL, PATRICK O'HARE, DAVID LETHEM, LYNN MARTIN, JEANNE KINGSLEY, and STEPHEN BERINI, | |
| Defendants, | |
| and | |
| FTE NETWORKS, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Efraim Barenbaum ("Plaintiff"), by and through his undersigned attorneys, brings this derivative complaint for the benefit of nominal defendant, FTE Networks, Inc. ("FTE" or the "Company"), against certain current and former members of the FTE Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, waste, and violations of § 14 of the Securities Exchange Act of 1934. Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by FTE with the United

States Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, and matters of public record.

## NATURE AND SUMMARY OF THE ACTION

1.      According to public filings with the SEC, FTE designs, builds, and supports networking infrastructures for the technology and telecommunications industries.

2.      Over the past year, FTE has been beset by multiple scandals that has resulted in the withdrawal of FTE's financial reporting for 2016, 2017, and the first three quarters of 2018, the termination of FTE's Chief Executive Officer, restatement of such financial reporting, the resignation of FTE's Chief Financial Officer, the resignation of FTE's Chief Operations Officer, the resignations of four of the six remaining members of FTE's board of directors ("Board") and potential delisting by the New York Stock Exchange ("NYSE").

3.      At the root of FTE's governance problems were several undisclosed related party transactions that undercut the propriety of financial and credit arrangements benefitting members of FTE management.  Compounding the questionable conduct of FTE management, certain Board members who were publicly-touted as being independent had themselves engaged in undisclosed financial arrangements with FTE that constituted related-party transactions thereby destroying independence. Members of management are also being investigated for significant personal expenses incurred by former officers that were charged to the Company, including: multiple trips on chartered jets to vacation destinations in the U.S., South America and Europe, as well as to a family home; the use of Company vehicles largely if not solely for personal purposes; incidental personal charges on Company credit cards; and Company payments for credit card bills in the names of former officers.  Additionally, FTE violated NYSE regulations by failing to get exchange

approval (or shareholder approval) for issuance of FTE stock that exceeded 20% of FTE's pre-existing outstanding stock.

4.      Had the FTE board (including named defendants) properly exercised their fiduciary duties owed to FTE and its shareholders, there would have been no need to withdraw reliance of FTE's publicly reported financial reporting for 2016 - 2018, no approval for the related-party credit agreements, no undisclosed related-party interest by members of management or its Board, no internal investigations and, most importantly, no mass exodus by FTE's management and the Board.

5.      Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.  The Board is currently composed of four members: Fred Sacramone ("Sacramone"), Richard Shiah ("Shiah"), Jeanne Kingsley ("Kingsley"), and Stephen Berini ("Berini"). Sacramone is the Co-Chief Executive Officer of FTE and the President of a wholly-owned FTE subsidiary.  Further, Sacramone provided funds to FTE under debt agreements that have been restructured as recently as April 24, 2019 and has repeatedly permitted delayed payment under such agreements through a series of forbearance agreements.  FTE publicly-stated that it does not considered Sacramone to be an independent member of the FTE board.  Defendant Shiah has served as an FTE Board member  during the time that the Board breached its fiduciary duties. As a result of Sacramone's conflict and Shiah's participation in the wrongdoing, at least half of the FTE' current board lacks independence and pre-suit demand is therefore futile.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Securities Exchange Act of

1934. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

7.       Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## PARTIES

### Plaintiff

8.       Plaintiff Efraim Barenbaum purchased shares of FTE stock in December 2018 and has continuously owned FTE stock since that date.

### Nominal Defendant

9.       Nominal Defendant FTE is a Nevada corporation with its principal offices located at 237 West 35th Street, Suite 806, New York, New York, 10001, according to FTE's most recent filings with the SEC. Prior to receipt of a notice to delist from the NYSE and trading halt on April 17, 2019, FTE's stock freely traded on the NYSE under the symbol "FTNW." FTE's stock began to trade again on June 17, 2019.

### Defendants

10.     Defendant Michael Palleschi ("Palleschi") served as the Company's Chief Executive Officer and Chairman of the Board of Directors from 2014 until he was placed on "Administrative Leave" on January 19, 2019 and his employment was terminated as of May 11, 2019.

11.     Defendant Sacramone currently serves as a director and Interim Co-Chief Executive Officer.  Sacramone served as a director of the Company since April 2017 and the President of  Benchmark Builders, Inc., a wholly-owned subsidiary of FTE since it was acquired by FTE in April 2017. Sacramone is a resident of Basking Ridge, New Jersey.

12.     Defendant Shiah served as a director of the Company since April 1, 2019.  Shiah had not been assigned to any Board committee as of April 5, 2019. As of June 11, 2019, it was reported that Shiah was the chairman of the Audit Committee, and been appointed to the other two Board Committees; the Compensation and the Nominating and Corporate Governance Committee. Shiah was a Senior Project Manager at Deloitte & Touche from 1983-1993.  Shiah is a resident of Berkeley Heights, New Jersey.

13.     Defendant Christopher Ferguson ("Ferguson") served as a director of the Company and chair of the FTE Compensation Committee until he resigned on May 29, 2019.  Prior June 3, 2019, it had not been publicly disclosed that Ferguson received payments of $26,500 between March 21, 2017 and August 17, 2017 for real estate that he sub-leased to the Company.  Ferguson agreed that he will return to FTE the amount that exceeds what he was due under his Board service agreement, currently estimated at $74,000 and subject to potential reduction for amounts due for 2016 and agreed to for 2019, through a reduction of the amount of monies that he loaned to the Company in the amount of $613,162.22 (inclusive of interest).

14.     Defendant Luisa Ingargiola served as a director of the Company and chair of the FTE Audit Committee until she resigned on May 29, 2019.  Prior to June 3, 2019, it had not been publicly disclosed that Ingargiola provided services to the Company at the request of Palleschi to engage with potential investors and lenders to help secure financing, in addition to her services as a Director, during 2017, 2018 and early 2019, and was compensated for such services.  As a result

of her receipt of compensation for such additional services, FTE admitted that Ingargiola did not meet the independence standards of NYSE American LLC and Rule 10A-3 under the Securities Exchange Act of 1934 for the purpose of serving on the Audit Committee of the Board.

15.     Defendant Brad Mitchell ("Mitchell") served as a director of the Company until his resignation on May 29, 2019.

16.     Defendant Patrick O'Hare ("O'Hare") served as a director of the Company and a member of the Audit Committee until his resignation on May 29, 2019.

17.     Defendant David Lethem ("Lethem") was the FTE Chief Financial Offer from June 2014 until he resigned on March 12, 2019.  Lethem also served as FTE's Vice President Of Corporate Compliance from April 2014 to June 2014.  On June 2, 2014, FTE entered into an employment agreement with Lethem to serve as CFO in consideration of a salary of $120,000 per year with standard employee insurance and other benefits.

18.     Defendant Lynn Martin was FTE's Chief Operating Officer from September 2016 until he resigned on January 25, 2019.  On September 27, 2016, FTE entered into an employment agreement with Martin to serve as the COO in consideration of a salary of $250,000 per year with standard employee insurance and other benefits.

19.     Defendant Kingsley was appointed as a FTE Director on or before June 10, 2019. Kinglsey is a member of the FTE Audit Committee.  Kingsley was a Senior Project Manager at Deloitte & Touche from 1985-1995.  Kingsley is a resident of Berkeley Heights, New Jersey.

20.     Defendant Berini was appointed as a FTE Director on June 10, 2019.

21.     The defendants named in ¶¶ 10-16 are sometimes referred to herein as the "Individual Board Members."

22. The defendants in ¶¶ 11-12 and ¶¶ 19-20 (Sacramone, Shiah, Kingsley, and Berini) are sometimes referred to as the "Current Board Members."

23. The defendants in ¶¶ 10, 17-18 (Palleschi, Lethem, and Martin) are sometimes referred to as "Management Defendants."

24. The defendants named in ¶¶ 10-20 are sometimes referred to hereinafter as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

25. By reason of their positions as officers, directors, and/or fiduciaries of FTE and because of their ability to control the business and corporate affairs of FTE, at all relevant times, the Individual Defendants owed FTE and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage FTE in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of FTE and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to FTE and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26. The Individual Defendants, because of their positions of control and authority as directors and/or officers of FTE, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with FTE, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

27.     To discharge their duties, the officers and directors of FTE were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.   By virtue of such duties, the officers and directors of FTE were required to, among other things:

> (a)     Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;
>
> (b)     Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;
>
> (c)     Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and
>
> (d)     When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

## SUBSTANTIVE ALLEGATIONS

**Background**

28.     According to SEC filings, FTE is a leading provider of innovation technology providing smart network connectivity platforms, infrastructure, and buildings. FTE provides end-to-end design, build, and support solutions for state-of-the-art networks, data centers, residential and commercial properties. FTE's services are predicated on smart design and consistent standards that reduce deployment costs and accelerate delivery of leading edge projects and services. The Company works with Fortune 100/500 companies, including some of the world's leading Telecommunications and IT Services Providers as well as REITs and Media Providers.

29.     From 2017, FTE raised capital through the issuance of various convertible notes. For example, FTE sold an aggregate principal amount of $22.7 million in convertible notes

between January 2017 and January 2019, of which approximately $9.8 million of principal and interest has been converted into 5,186,306 shares of Company common stock through March 19, 2019. The convertible notes were issued net of original issuance discounts and deferred finance costs totaling approximately $2.8 million and the Company received approximately $19.9 million in net proceeds.  As of March 19, 2019, the Company has issued an aggregate of 5,448,287 shares of its Common Stock to investors relating to inducement to enter into, and the conversion of principal and accrued interest owed under, certain of the convertible notes.

30.     In advance of a shareholder meeting scheduled for December 26, 2018 annual meeting, FTE disseminated a SEC Form 14A Proxy Statement ("Proxy Statement") seeking the election of Palleschi, Sacramone, Ferguson. Ingargiola, Mitchell and O'Hare as directors.  FTE shareholders were also asked to approve the formation of a staggered board service whereby Palleschi and Ferguson would remain as directors until the 2021 annual meeting and Ingargiola and O'Hare would remain directors until the 2020  annual meeting. The Proxy Statement  states that "from January 1, 2017 through the date of this Annual Report on Form 10-K, there have been no  related-party  transactions,  except  for  the  executive  officer  and  director  compensation arrangements described in the section "Executive Compensation" and as described below." The executive compensation described refers to compensation for Palleschi, Lethem, and Martin.

31.     On January 24, 2019, FTE filed an SEC Form 8-K that publicly disclosed that Palleschi  was  placed  on  a  "leave  of  absence"  and  that  Anthony  Sirotka,  FTE's  Chief Administrative Offer, would serve as the Interim CEO.  This Form 8-K also disclosed that Martin resigned as Chief Operations Offer effective January 25, 2019.  No reasons were given for the change of status for Palleschi or Martin.

32.     On March 12, 2019, FTE filed a SEC Form 8-K that disclosed that Lethem had resigned as Chief Financial Officer effective March 11, 2019 pursuant to the terms of a separation agreement, executed on February 26, 2019, wherein FTE agreed to pay Lethem a severance payment of $87,500, which shall be paid in equal installments over a six-month period. No reason was given for Lethem's departure from FTE.

33.     On March 22, 2019, FTE filed an SEC Form 8-KA that revealed for the first time that an investigation was being conducted into the issuance, accounting and disclosure of convertible notes.  FTE stated that the investigation "will be overseen by the Audit Committee (Ingargiola and O'Hare), which consists solely of independent directors, related to: whether Company management had the proper authorization to issue the [convertible notes] and the related shares issuable upon conversion of the [convertible notes], as well as certain other debt instruments and equity transactions; issues related to the accounting for and disclosure of certain expenses incurred by management; and the appropriateness and disclosure of certain related party transactions."  Ingargiola and O'Hare were subsequently removed as FTE directors after certain related-party transactions were revealed comprising their independence.

34.     Additionally, the March 22, 2019 Form 8-KA disclosed that "as of March 19, 2019, the Company has issued an aggregate of 5,448,287 shares of its Common Stock to Investors relating to inducement to enter into, and the conversion of principal and accrued interest owed under, certain of the Notes.  In addition, the Company has issued an aggregate of 78,914 shares of its Common Stock to Investors relating to the exercise of Common Stock Warrants to purchase its common stock issued to Investors as inducement to enter into the Notes."

35.     On March 25, 2019, FTE received a public reprimand letter form the NYSE based on noncompliance with Exchange regulations Sections 301 and 713. Specifically, the reprimand

letter states that "the Company failed to file an application to obtain Exchange approval for the issuance of additional shares of the Company's common stock as required under Section 301 of the Company Guide and failed to obtain shareholder approval of an issuance that exceeded 20% of the Company's common stock outstanding, as required under Section 713 of the Company Guide. The shares at issue are described in the Company's Form 8-K/A filed on March 22, 2019."

36.     On April 1, 2019, FTE reported that Shiah was appointed to the FTE Board and stated that Shiah was not assigned to any Board committees.

37.     On the same date, FTE filed a SEC Form 12b-25give notification that the Form 10-K would not be filed on a timely basis.  The document state "as previously disclosed, an executive committee of the Company's Board of Directors is conducting an independent investigation, to be overseen by the Audit Committee (Ingargiola and O'Hare), related to: whether Company management had the proper authorization to issue certain convertible notes and the related shares issuable upon conversion of these convertible notes, as well as certain other debt instruments and equity transactions; issues related to the accounting for and disclosure of certain expenses incurred by management; and the appropriateness and disclosure of certain related party transactions.  As a result of these developments, the Company is unable to complete the preparation of its consolidated financial statements and related disclosures to be included in the Form 10-K, to have them properly certified by its principal executive officers, and reviewed by its independent registered public accounting firm in order to timely file the Form 10-K."

38.     On April 4, 2019, it was revealed that FTE had received an communication from its auditor and concluded that previously issued audited financial statements for 2017 and the interim reviews of the financial statements for the periods ended March 31, June 30, and September 30, 2018 and 2017, should no longer be relied upon.  "The conclusion to prevent future reliance

on the aforementioned financial statements resulted from the determination that such financial statements failed to properly account for certain convertible notes and other potentially dilutive securities. Specifically, the Company identified a potential issue related to the accounting related to certain convertible notes and other potentially dilutive securities the Company issued in 2017, 2018, and 2019."

39.     On April 4, 2019, it was revealed that Palleschi had sought mandatory arbitration pursuant to his employment agreement alleging breach of employment and seeking $11.3 million in damages.  Two days later, FTE issued a notice of non-renewal of the Palleschi contract under the terms of the employment agreement.

40.     On April 22, 2019,  FTE filed SEC Form 8-K stating that "on April 17, 2019, the Company received a notice from the NYSE Regulation staff of the [NYSE] indicating that the Company is not in compliance with NYSE's continued listing requirements under the timely filing criteria outlined in Section 1007 of the NYSE American Listed Company Manual as a result of the Company's failure to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 ."

41.     On April 25, 2019, FTE announced that it had entered into an agreement with Sacramone and others to restructure the Company's outstanding debt including modifications and extension of existing debt obligations and restructuring of certain convertible notes. Thereafter, FTE and Sacramone entered into a series of forbearance agreements that extended the date on which payments pursuant to the notes would be payable.

42.     On April 29, 2019, findings of the investigation into issues concerning the convertible notes were present to the Board. Additional Board meetings were conducted on May

7, 2018, May 8, 2019, and May 13, 2019 at which the findings of the investigation were presented to the FTE Board.

43.     On May 11, 2019, Michael Palleschi notified the Company of his resignation from the Company's Board and as the Company's Chief Executive Officer, effective May 10, 2019. On May 13, 2019, the Board accepted his resignation from the Board without compensation and without a release and terminated Palleschi's employment as the Company's Chief Executive Officer.

44.     On May 14, 2019, Defendant Ingargiola resigned from the Audit Committee (leaving O'Hare as the sole member of the FTE Audit Committee), but retained her seat on the FTE Board.

45.     On May 23, 2019, FTE sent a letter to all FTE shareholders of record seeking to validate corporate acts not in compliance with Title 7 of the Nevada Revised Statutes or articles of incorporation or bylaws of a company. The letter stated that an internal investigation concluded that various corporate acts were "found not to be in compliance with governing documents."  A lengthy list of non-compliant acts was attached as an exhibit to this letter.  FTE Board members (including Shiah and Sacramone) thereafter attempted to ratify the non-compliant acts.  Even so, the non-compliant acts constitute breaches of the Individual Defendants' fiduciary duties.

46.     On May 29, 2019, FTE filed an SEC Form 8-K announcing that four directors stepped down from the FTE Board.  The four directors were Ingargiola, Ferguson, Mitchell and O'Hare.  With Palleschi's departure from the Board on May 10, 2019, the only two remaining Board members were Sacramone and Shiah.

47.     The May 29, 2019 8-K stated that "while conducting diligence on Board compensation in connection with the previously announced debt restructuring, the Company

concluded that Ingargiola provided services to the Company at the request of Palleschi to engage with potential investors and lenders to help secure financing, in addition to her services as a Director, during 2017, 2018 and early 2019, and was compensated for such services. Ingargiola received payments totaling $101,112 during 2017, $76,999 during 2018, and $4,596 during 2019, as well as employment benefits over the same period totaling $15,225.00, and a car allowance expense from April through September 2017 estimated to be $3,600. The 2017 and 2018 compensation amounts were $71,112 and $46,999 higher, respectively, than the terms of Ingargiola's original board service agreement, exclusive of the benefits mentioned above. As a result of her receipt of compensation for such additional services, Ingargiola did not meet the independence standards of NYSE American LLC and Rule 10A-3 under the Securities Exchange Act of 1934 for the purpose of serving on the Audit Committee of the Board."

48.     The May 29, 2019 8-K stated also that "during 2017 and 2018, Christopher Ferguson received a total of $130,500 of compensation in connection with his service as a Director. Further, Ferguson received payments of $26,500 between March 21, 2017 and August 17, 2017 for real estate that he sub-leased to the Company."  The 8-K continued "while the Company has not been able to determine that Ferguson was not independent for Audit Committee purposes during his service, Ferguson has agreed that he will return to the Company the amount that exceeds what he was due under his board service agreement, currently estimated at $74,000 and subject to potential reduction for amounts due for 2016 and agreed to for 2019, through a reduction of the amount of monies that he loaned to the Company in the amount of $613,162.22 (inclusive of interest)." There has been no public disclosure that Ferguson was ever a member of the FTE Audit Committee. In fact, the most recent Proxy Statement states that Ferguson is only a member of the Compensation Committee.

49.     The May 29, 2019 Form 8-K did not disclose the reasons for Mitchell's and O'Hare's departure from the FTE Board.

50.     On June 8, 2019, Sacramone and Shiah appointed Defendants Kingsley and Berini to the FTE Board.

51.     On June 13, 2019, the Company confirmed that 2017 yearly and 2018 quarterly financial statement should not be relied upon because such financial statements failed to properly account for certain convertible notes and other potentially dilutive securities. In that same release, it was reported for the first time that 2016 financial reports should also not be relied upon. It is expected that all financial statements will be restated.

52.     The June 13, 2019 Form 8-K also revealed that "under the Company's bylaws, equity issuances require authorization from the Board. The investigation team informed the Company that it had found that proper Board authorization was lacking for certain equity issuances. Specifically, the investigation found issuances that were supported by resolutions that did not comport with Nevada state law and the Company's bylaws, issuances for which no Board authorization existed, and issuances that were supported by falsified Board authorizations under which a former Company officer copied previous electronic signatures of Board members onto new documents."

53.     It was also reported that issues related to the accounting for and disclosure of certain expenses incurred by management, as well as the appropriateness and disclosure of certain related party transactions were under review including "significant personal expenses incurred by former officers that were charged to the Company, including: multiple trips on chartered jets to vacation destinations in the U.S., South America and Europe, as well as to a family home; the use of Company vehicles largely if not solely for personal purposes; incidental personal charges on

Company credit cards; and Company payments for credit card bills in the names of former officers." There were also instances of at least one large share issuance to a related party that was not reported timely and instances in which cash transfers were made to former officers with little or no support.

54.     On June 13, 2019, it was also reported that Defendant Sacramone would serve as the Interim Co-Chief Executive Officer.

55.     Each of the Individual Defendant were participants in an incentive compensation plan approved in 2017 and applicable to FTE management and directors.  On written consent of majority stockholders without a shareholder meeting, the Individual Defendants obtained ratification of the 2017 Omnibus Incentive Plan which states that "all of our directors, officers and employees are eligible to participate in, and receive awards under the 2017 Incentive Plan."  The written consent also allowed for the increase of FTE shares from 8,000,000 to 100,000,000.  The compensation awarded to the Individual defendants was based upon false reporting of FTE's financial condition and the stated lack of related-transactions.

56.     The Individual Defendants breached their fiduciary obligations of loyalty, care and candor by concealing the related-party transactions that otherwise rendered so-called independent directors as interested parties.  Further, the Individual Defendants failed to disclose that the Board and management held undisclosed conflicts of interest from related-party transactions.  The Individual Defendants likewise did not implement appropriate internal controls that would have required the proper consideration, approval, and payments under FTE financing agreements, such as the convertible notes, and/or otherwise forced the disclosure of all related party interests held by management and the FTE Board.

## DAMAGES TO THE COMPANY

57.     As a direct and proximate result of the Individual Defendants' conduct, FTE has been seriously harmed and will continue to be. Such harm includes, but is not limited to:

(a)     Cost incurred in connection with the accounting investigation;

(b)     Costs incurred in connection with any restatement of FTE's financial reporting for 2016 - 2018;

(c)     Costs incurred with obtaining compliance with NYSE regulations concerning the issuance of FTE stock that exceeded 20% of the Company's pre-existing common stock;

(d)     Costs incurred in connection with the suspension and possible delisting of FTE's securities from the NYSE;

(e)     Costs incurred in payment of undisclosed compensation and benefits to members of FTE's management and Board members;  and

(f)     Costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to FTE.

58.     In addition, FTE's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management  and the two remaining  Board members are now in serious doubt.

59.     The actions complained of herein have irreparably damaged FTE's corporate image and goodwill.  For at least the foreseeable future, FTE will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior

and have misled the investing public, such that FTE's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

60.     Plaintiff brings this action derivatively in the right and for the benefit of FTE to redress injuries suffered, and to be suffered, by FTE as a direct result of breaches of fiduciary duty by the Individual Defendants, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Exchange Act. FTE is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

61.     Plaintiff will adequately and fairly represent the interests of FTE in enforcing and prosecuting its rights.

62.     Plaintiff has continuously been a shareholder of FTE at times relevant to the wrongdoing complained of and is a current FTE shareholder.

63.     When this action was filed, FTE's Board of Directors consisted of Current Board Members Sacramone, Shiah, Kingsley, and Berini.  Plaintiff did not make any demand on the Current Board to institute this action because such a demand would be a futile, wasteful, and useless act, because at least half of the FTE board is conflicted.

64.     At all relevant times, Sacramone's principal employment was as President of Benchmark Builders, Inc., which became a wholly-owned subsidiary of FTE after Benchmark was acquired in 2017.  Sacramone is currently serving as FTE's Interim Co-Chief Executive Officer. On February 12, 2019, FTE, by and through Benchmark, entered into an Amended and Restated Employment Agreement with Sacramone (the "Sacramone Employment Agreement"), providing

certain terms and conditions in connection with Sacramone's position at Benchmark. The principal terms of the Sacramone Employment Agreement provide in relevant part for:

- a two-year term of employment, ending on December 31, 2021 (the "Initial Term"), unless extended or sooner terminated in accordance with its provisions;

- an annual base salary of $500,000 and a guaranteed annual incentive bonus equal to five percent (5.0%) of the EBITDA of Benchmark for such calendar year; and

- an extended non-compete period, which shall run from February 12, 2019 until the later of (a) five years or (b) 12 months immediately following the termination of Mr. Sacramone's employment for whatever reason.

65.     In additional to his management role, Sacramone held an interest in $42 million promissory notes negotiated by Palleschi and issued by FTE to Sacramone and his Benchmark partner, Brian McMahon.  Sacramone restructured the FTE debt on April 24, 2019 and had entered into numerous sequential forbearance agreement pushing off the date for payment under the various credit instruments.

66.     Defendant Sacramone made the misrepresentations through the public filings they reviewed and signed.  Sacramone failed to ensure the integrity of the Company's internal controls, allowing the misleading statements to be disseminated in the Company's SEC filings and other disclosures.

67.     FTE in its Annual Proxy Statement, filed December 10, 2018, acknowledges that Sacramone is not independent.

68.     Defendant Shiah was appointed to and participated in Board decisions since April 1, 2019. He attended various board meetings prior to June 11, 2019 that are the subject of the conduct for which FTE is being investigated.   Shiah also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors.

69.     Thus, Sacramone and Shiah are not disinterested, and demand is excused because they constitute one half of FTE's Current Board.

**COUNT I**
**Against All Individual Defendants for Breach of Fiduciary Duty**

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of FTE's business and affairs, particularly with respect to issues as fundamental as public disclosures.

72.     The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of FTE.

73.     In breach of their fiduciary duties owed to FTE, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

74.     In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

75.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, FTE has sustained and continues to sustain significant damages. Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets. As a result of the misconduct alleged herein, defendants are liable to the Company.

**COUNT II**
**Against All Defendants for Unjust Enrichment**

76.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

77.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of FTE.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to FTE.

78.     Plaintiff, as a stockholder and representative of FTE, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

79.     Plaintiff, on behalf of FTE, has no adequate remedy at law.

**COUNT III**
**Against All Defendants for Violations of Section 14 of the**
**Securities Exchange Act of 1934**

80.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's Proxy Statement filed in December 2018 violated §14(a) and Rule 14a-9 because they concealed the related party transactions and failed to properly disclose the authorization, payment , and disclosure of

convertible notes. This resulted in the inflation of the Company's revenue and misrepresented the Board's actual activities with respect to risk management while soliciting votes to reelect and compensate directors who were breaching their fiduciary duties.

82. In the exercise of reasonable care, defendants should have known that the statements contained in the proxy statement were materially false and misleading.

83. The misrepresentations and omissions in the Proxy Statement were material to Company shareholders in voting on the proxy statement. The 2017 proxy statement solicited shareholder votes for: (i) director nominees; and (ii) implementation of a staggered board; and (iii) ratification of the appointment of the Company's independent auditor. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties.

84. The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statement.

## COUNT IV
### Against All Defendants for Waste of Corporate Assets

85. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86. The Individual Defendants knowingly, intentionally, recklessly, or negligently breached their fiduciary duties and, thereby, caused the Company to waste its assets, expend millions of dollars of corporate funds, and impair its reputation and credibility for no legitimate business purpose, as a result of which FTE has been and continues to be substantially damaged.

87. In light of their deficient performance in supervising controls and financial affairs of the Company, the Individual Defendants have wasted corporate assets by overly compensating

themselves and the Company's executives during times when the Company was materially misstating its performance to the investing public.

88.     Accordingly, the Individual Defendants should be required to make the Company whole for such waste.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of FTE, demands judgment as follows:

A.     Declaring that plaintiff may maintain this action on behalf of FTE and that plaintiff is an adequate representative of the Company;

B.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

C.     Declaring that Defendants have breached and/or aided and abetted the breach of their fiduciary duties to FTE;

D.     Directing FTE to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect FTE and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.     a proposal to strengthen the Company's controls over financial reporting;

2.     a proposal to strengthen the Company's controls over related-party transactions;

3.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.      a proposal to strengthen FTE's oversight of its disclosure procedures;

5.      a provision to control insider transactions; and

6.      a provision to permit the stockholders of FTE to nominate at least three candidates for election to the Board;

E.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of FTE has an effective remedy;

F.      Awarding to FTE restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

G.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

H.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: June 24, 2019                          **GLANCY PRONGAY & MURRAY LLP**

Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
Telephone:  (212) 935-7400
E-mail: mhouston@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Joseph Cohen
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 210-9160
Email: jcohen@glancylaw.com

Jack Zwick
225 Broadway, Suite 1440
New York, NY 10007
Telephone: (212) 385-1900
Facsimile: (212) 385-1911
jack@zwickfirm.com

*Attorneys for Plaintiff Efraim Barenbaum*

## VERIFICATION

I, Efraim Barenbaum, do hereby verify that I am a holder of common stock of FTE Networks, Inc., and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint and all of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   June 21, 2019

Efraim Barenbaum