# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EFRAIM BARENBAUM, IRA, Derivatively on Behalf of Nominal Defendant FTE NETWORKS, INC., | Case No. 19-cv-5913 |
| | Hon. Paul A. Engelmayer |
| Plaintiff, | |
| v. | |
| MICHAEL PALLESCHI, FRED SACRAMONE, JAMES SHIAH, CHRISTOPHER FERGUSON, LUISA INGARGIOLA, BRAD MITCHELL, PATRICK O'HARE, DAVID LETHEM, LYNN MARTIN, JEANNE KINGSLEY, and STEPHEN BERINI, | |
| Defendants, | |
| and | |
| FTE NETWORKS, INC., | |
| Nominal Defendant. | |

## <u>VERIFIED AMENDED SHAREHOLDER DERIVATIVE COMPLAINT</u>

Plaintiff Efraim Barenbaum, IRA ("Plaintiff"), by and through its undersigned attorneys, brings this amended derivative complaint for the benefit of nominal defendant, FTE Networks, Inc. ("FTE" or the "Company"), against current and former members of the FTE Board of Directors (the "Board") and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties, unjust enrichment, waste, and violations of § 14 of the Securities Exchange Act of 1934. Plaintiff's allegations are based upon its personal knowledge as to itself and its own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by

FTE with the United States Securities and Exchange Commission ("SEC"), press releases, lawsuits filed against FTE, news reports, analyst reports, investor conference transcripts, and matters of public record.

## NATURE AND SUMMARY OF THE ACTION

1.     According to public filings with the SEC, FTE designs, builds, and supports networking infrastructures for the technology and telecommunications industries.

2.     Over the past year, FTE has been beset by multiple scandals that has resulted in: the withdrawal of FTE's financial reporting for 2016, 2017, and the first three quarters of 2018; restatement of FTE's financial reporting; the termination of FTE's Chief Executive Officer Michael Palleschi ("Palleschi"); the resignation of the substituted Co-Interim Chief Executive Officer; the resignation of FTE's Chief Financial Officer; the resignation of FTE's Chief Operations Officer; and multiple notices of delisting by the New York Stock Exchange ("NYSE"). Demonstrating the lack of stewardship among the FTE Board of Directors, the FTE boardroom has had a revolving door with more than eight directors leaving the board over the past year – some with less than four months tenure.

3.     At the root of FTE's governance problems were numerous undisclosed related-party transactions that undercut the propriety of FTE's financial and credit arrangements.  A series of 71 high-cost equity agreements, which were never disclosed to FTE shareholders, were entered into over the course of several months benefitting individual defendants by falsely propping up the value of FTE that, in turn, prevented the default on loans held by certain defendants and continued the payment of compensation to all of the individual defendants.  Contrary to the FTE bylaws that required FTE Directors sign off on every equity issuance, the equity agreements either did not obtain FTE Directors consent or bore the signatures of FTE Directors that were allegedly forged.

If the FTE Director authorizations were valid, the authorizations were a breach of the FTE Director's duties to approve self-dealing transactions. If the signatures were forgeries, these same directors are still liable for failing to implement internal controls requiring checks and balances to prevent their electronic signatures from being used without their knowledge for unauthorized loans. Compounding the questionable conduct of FTE management, certain Board members (Ferguson and Ingargiola) who were publicly-touted as being independent had themselves engaged in undisclosed financial arrangements with FTE that constituted related-party transactions thereby destroying independence. As part of the unauthorized financial credit arrangements, FTE violated NYSE regulations by failing to get exchange approval (or shareholder approval) for issuance of FTE stock that exceeded 20% of FTE's pre-existing outstanding stock.

4.      Members of the FTE board and management were also liable for permitting payment of significant personal expenses incurred by former officers that were charged to the Company, including: multiple trips on chartered jets to vacation destinations in the U.S., South America and Europe, as well as to a family home; the use of Company vehicles largely if not solely for personal purposes; incidental personal charges on Company credit cards; and Company payments for credit card bills in the names of former officers. Similarly, as subsequently admitted by FTE, Pelleschi was permitted to unilaterally increase his compensation without FTE Board approval by $1 million.

5.      Had the FTE Board and management (including named individual defendants) properly exercised their fiduciary duties owed to FTE and its shareholders, there would have been: no need to withdraw reliance of FTE's publicly reported financial reporting for 2016 – 2018; no restatements, no unapproved related-party equity and credit agreements; no unauthorized rolling credit agreements funding FTE resulting in the loss of millions of dollars and dilution of FTE

stock; no alleged serial forgery of signatures on such agreements; no payments of related-party expenses; no undisclosed related-party interest by members of FTE management or the FTE Board; no breach of FTE's credit agreements resulting in defaults and strict foreclosure, no internal investigations; no SEC investigation; and, critically, no mass exodus by FTE's management and the Board.

6.     Plaintiff did not make a litigation demand prior to filing this action because such demand would have been futile based upon the composition of the Board and the actions taken by the Board.

7.     Defendants Christopher Ferguson ("Ferguson"), Luisa Ingargiola ("Ingargiola"), Brad Mitchell ("Mitchell"), and Patrick O'Hare ("O'Hare") were FTE directors until they resigned on May 29, 2019.  At the time of filing the complaint on June 24, 2019, the disclosed members of the Board were: Fred Sacramone ("Sacramone"), Richard Shiah ("Shiah"), Jeanne Kingsley ("Kingsley"), and Stephen Berini ("Berini").  Three days after the filing of the complaint, FTE announced that the Board appointed two additional directors: Richard Omanoff ("Omanoff") and Irving Rothman ("Rothman").  On October 9, 2019, Shiah, Kingsley, Berini, and Rothman resigned from the FTE Board.  On October 18, 2019, Sacramone and Omanoff resigned from the FTE Board.

8.     Sacramone is the Co-Chief Executive Officer of FTE and the President of Benchmark Builders, Inc. ("Benchmark"), a wholly-owned FTE subsidiary since 2017 and the principal source of FTE's revenue.  Sacramone provided substantial loans to FTE under debt agreements that have been restructured as recently as April 24, 2019 and repeatedly permitted delayed payment under such agreements through a series of twelve forbearance agreements.  FTE publicly-stated that it does not consider Sacramone to be an independent member of the FTE board.

Prior to the filing of the complaint, Sacramone appointed (without shareholder approval) Shiah, Kingsley, and Bernini.  Sacramone also retrospectively appointed Omanoff as of the date of the filing of Plaintiff's complaint.  As a result of Sacramone's acknowledged conflict and his appointment of all other directors, the FTE' Board lacked independence and pre-suit demand is therefore futile.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this Complaint states a federal question: violations of Section 14(a) of the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

10.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, FTE's principal place of business is located in this District, and the Defendants have received substantial compensation in this district by engaging in numerous activities that had an effect in this District.

## PARTIES

**Plaintiff**

11.      Efraim Barenbaum purchased shares of FTE stock both individually and through his Individual Retirement Account ("IRA").  Beginning in February 2016, Barenbaum purchased shares of FTE stock in his IRA.  Plaintiff has continuously owned FTE stock since 2016.

**Nominal Defendant**

12.     Nominal Defendant FTE is a Nevada corporation with its principal offices located at 237 West 35th Street, Suite 806, New York, New York, 10001, according to FTE's recent filings with the SEC.  Prior to receipt of a notice to delist from the NYSE and trading halt on April 17, 2019, FTE's stock freely traded on the NYSE under the symbol "FTNW."  FTE's stock began to trade again on June 17, 2019.  FTE received a second notice to delist on October 17, 2019 because the FTE Audit Committee was non-compliant, there were not two independent directors, there was no financially sophisticated director on the board, and the Compensation Committee was no longer compliant.

**Defendants**

13.     Defendant Palleschi served as the Company's Chief Executive Officer and Chairman of the Board of Directors from 2014 until he was placed on "administrative leave" on January 19, 2019 and his employment was terminated as of May 11, 2019.

14.     Defendant Sacramone served as a director and Interim Co-Chief Executive Officer until he left FTE on October 18, 2019.   Sacramone served as a director of the Company since April 2017 and the President of  Benchmark, a wholly-owned subsidiary of FTE.  Sacramone has not previously served as a director of a public company.  Sacramone provided substantial loans to FTE as part of the acquisition of Benchmark.  Sacramone is a resident of Basking Ridge, New Jersey.

15.     Defendant Shiah served as a director of the Company from April 1, 2019 to October 9, 2019.  Shiah was appointed to the FTE Board by Sacramone and did not stand for election before the FTE shareholders prior to his resignation.  Shiah was not assigned to any Board committee as of April 5, 2019.  As of June 11, 2019, it was reported that Shiah was named the chairman of the

6

Audit Committee, and appointed to the other two Board Committees; the Compensation and the Nominating and Corporate Governance Committee.  Shiah left the FTE Board on October 9, 2019. Shiah has not previously served as a director for a public company.  Shiah was a Senior Project Manager at Deloitte & Touche from 1983-1993.  Shiah is a resident of Berkeley Heights, New Jersey.

16.     Defendant Ferguson served as a director of FTE and chair of the FTE Compensation Committee until he left the board on May 29, 2019.  Prior to June 3, 2019, it had not been publicly disclosed that Ferguson received payments of $26,500 between March 21, 2017 and August 17, 2017 for real estate that he sub-leased to the Company.  Ferguson agreed that he will return to FTE the amount that exceeds what he was due under his Board service agreement, currently estimated at $74,000 and subject to potential reduction for amounts due for 2016 and agreed to for 2019, through a reduction of the amount of monies that he loaned to the Company in the amount of $613,162.22 (inclusive of interest).  Ferguson has not previously served as a director for a public company.

17.     Defendant Ingargiola served as a director of the Company until she left the Board on May 29, 2019 and was the chair of the FTE Audit Committee until she resigned on May 14, 2019.  Prior to June 3, 2019, it had not been publicly disclosed that Ingargiola provided services to the Company, at the request of Palleschi, to engage with potential investors and lenders to help secure financing during 2017, 2018 and early 2019 and was compensated for such services.  As a result of her receipt of compensation for such additional services, FTE admitted that Ingargiola did not meet the independence standards of NYSE American LLC and Rule 10A-3 under the Securities Exchange Act of 1934 for the purpose of serving on (let alone chairing) the Audit Committee of the Board.

18.     Defendant Mitchell served as a director of the Company until he stepped down on May 29, 2019.  Mitchell has not previously served as a director for a public company.

19.     Defendant Patrick O'Hare served as a director of the Company and a member of the Audit Committee until he left the FTE Board on May 29, 2019.  O'Hare has not previously served as a director for a public company.

20.     Defendant Kingsley was appointed as a FTE Director by Sacramone and Shiah on or before June 10, 2019 and left the FTE Board as of October 9, 2019.  Kinglsey was a member of the FTE Audit Committee for four months.  Kingsley was appointed to the Audit Committee in order to regain listing compliance with the NYSE.  Kingsley has not previously served as a director for a public company.  Kingsley was a Senior Project Manager at Deloitte & Touche from 1985-1995.  Kingsley is a resident of Berkeley Heights, New Jersey.

21.     Defendant Berini was appointed as a FTE Director by Sacramone and Shiah on June 10, 2019 and stepped down as of October 9, 2019.    Berini served on the FTE Audit Committee from September 17, 2019 to October 9, 2019.  Berini has not previously served as a director for a public company.

22.     Defendant David Lethem ("Lethem") was the FTE Chief Financial Offer ("CFO") from June 2014 until he was terminated on March 12, 2019.  Lethem also served as FTE's Vice President Of Corporate Compliance from April 2014 to June 2014.  On June 2, 2014, FTE entered into an employment agreement with Lethem to serve as CFO in consideration of a salary of $120,000 per year with standard employee insurance and other benefits.  In 2017, Lethem received $252,000 in salary and stock awards.

23.     Defendant Lynn Martin ("Martin") was FTE's Chief Operating Officer ("COO") from September 2016 until he left FTE on January 25, 2019.  On September 27, 2016, FTE entered

into an employment agreement with Martin to serve as the COO in consideration of a salary of $250,000 per year with standard employee insurance and other benefits.  In 2017, Martin received $355,000 in salary and stock awards.

24.     The defendants named in ¶¶ 13-21  are sometimes referred to herein as the "Individual Board Members."

25.     The defendants in ¶¶ 13, 22-23 (Palleschi, Lethem, and Martin) are sometimes referred to as "Management Defendants."

26.     The defendants named in ¶¶ 13-23 are sometimes referred to hereinafter as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

27.     By reason of their positions as officers, directors, and/or fiduciaries of FTE and because of their ability to control the business and corporate affairs of FTE, at all relevant times, the Individual Defendants owed FTE and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were required to use their utmost ability to control and manage FTE in a fair, just, honest, and equitable manner. The Individual Defendants were required to act in furtherance of the best interests of FTE and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to FTE and its shareholders a fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

28.      The Individual Defendants, because of their positions of control and authority as directors and/or officers of FTE, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial,

and directorial positions with FTE, each of the Individual Defendants had knowledge of material non-public information regarding the Company.

29.    To discharge their duties, the officers and directors of FTE were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties, the directors and officers of FTE were required to, among other things:

(a)    Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

(b)    Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal, state, and exchange laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

(c)    Exercise good faith to ensure that the Company's communications with the public and with shareholders are made with due candor in a timely and complete fashion; and

(d)    When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

30.    As of December 31, 2017, FTE directors and members of management were responsible for establishing and maintaining adequate internal control over financial reporting ("ICFR") for the Company.  The framework used by management in making that assessment was the criteria set forth in the document entitled "2013 Internal Control - Integrated Framework" issued by the Committee of Sponsoring Organizations of the Treadway Commission, ("COSO"). Based on that assessment, management concluded that, during the period covered by this report, such internal controls and procedures were not effective as of December 31, 2017 and that material weaknesses in ICFR existed as more fully described below.

31.     A material weakness is a deficiency, or a combination of deficiencies, within the meaning of Public Company Accounting Oversight Board ("PCAOB") Audit Standard No. 5, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. FTE identified the following material weaknesses which have caused FTE to conclude that as of December 31, 2017 its internal controls over financial reporting were not effective at the reasonable assurance level:

(a)     As of December 31, 2017, FTE did  not completed an effective assessment of the Company's internal controls over financial reporting based on the COSO framework. FTE concluded that internal controls and procedures were not effective to detect the inappropriate application of U.S. GAAP. Management identified the following material weaknesses set forth below in our internal control over financial reporting;

(b)     FTE lacked the necessary corporate accounting resources to fully integrate the acquisition of Benchmark;

(c)     FTE did not perform an effective risk assessment or monitor internal controls over financial reporting;

(d)     FTE did not have written documentation of internal control policies and procedures. Written documentation of key internal controls over financial reporting is a requirement of Section 404 of the Sarbanes-Oxley Act which is applicable to us for the year ended December 31, 2017. FTE evaluated the impact of its failure to have written documentation of internal controls and procedures on the assessment of our disclosure controls and procedures and concluded that the control deficiency that resulted represented a material weakness; and

(e)     FTE lacked the appropriate resources to ensure all required reports are timely compiled and filed.

32.     The Individual Defendants are also required to comply with FTE's Code of Ethics Code, that, inter alia, provides:

(a)     Personal interests of employees, directors and officers of the Company shall not interfere with, or appear to interfere with, the interests of the Company. Employees, directors and officers of the Company shall avoid situations in

which their actions or interests make it difficult to perform their duties on behalf of the Company in an objective and effective manner;

(b)     Employees, directors and officers of the Company may not compete with the Company or disadvantage the Company by taking for personal gain corporate opportunities or engage in any action that creates actual or apparent conflicts of interest with the Company. Any employee involved in a transaction with the Company or that has an interest or a relationship that reasonably could be expected to give rise to a conflict of interest must report the matter promptly to the employee's manager. Any officer or director involved in a transaction with the Company or that has an interest or a relationship that reasonably could be expected to give rise to a conflict of interest must report the matter promptly to the Audit Committee;

(c)     The Company is committed to recording all business transactions accurately and truthfully in accordance with generally accepted accounting principles. The Company maintains appropriate internal controls to prevent, and detect, fraud, and to ensure that the Company's accounting and financial records and supporting data describes transactions without omission, concealment or falsification;

(d)     Any employee, director and officer of the Company who observes any conduct or business practice that may violate the Code or legal requirements has an obligation to report the matter promptly to the attention of management or to the Chairman of the Audit Committee; and

(e)     Violations of the Code may subject the violator to disciplinary action, including where appropriate, termination of employment. The Audit Committee of the Board shall report significant violations to the full Board and recommend appropriate action. Any claim that a director has violated the Code will be reviewed by the full Board.

33.     Individual Defendants who were also members of the Audit Committee had heightened fiduciary duties as set forth in the Audit Committee Charter that provides:

(a)     The Committee is appointed by the Board to oversee the accounting and financial reporting processes of the Corporation and audits of the financial statements of the Corporation and to have direct and sole responsibility for the appointment, compensation, retention, oversight and termination of the Corporation's independent auditors ("Auditors"). The Committee shall further provide assistance and expertise to the full Board in fulfilling its responsibility to the stockholders, potential stockholders, and investment community relating to corporate accounting, reporting practices of the Corporation, and the quality and integrity of the financial reports of the Corporation. In so doing, it is the responsibility of the Committee to

maintain free and open means of communication between the directors, the Auditors, and the financial management of the Corporation. In addition, the Committee shall review the policies and procedures adopted by the Corporation to fulfill its responsibilities regarding the fair and accurate presentation of financial statements in accordance with generally accepted accounting principles and applicable rules and regulations of the Securities and Exchange Commission (the "SEC"), including but not limited to Rule 10A-3 under the Exchange Act and the NYSE MKT audit committee requirements, including but not limited to Section 803B of the Company Guide;

(b)     The Committee shall have the power to conduct or authorize investigations into any matters within the Committee's scope of responsibilities. The Committee shall be empowered to engage independent counsel and other advisers, at the Corporation's expense, without seeking approval from the Board or any officer of the Corporation, as the Committee determines necessary to carry out its duties;

(c)     All powers of the Committee are subject to the restrictions designated in the Corporation's Bylaws and applicable law. In carrying out its responsibilities, the Committee believes its policies and procedures should remain flexible, in order to best react to changing conditions and to ensure to the directors and stockholders that the corporate accounting and reporting practices of the Corporation are in accordance with all requirements and are of the highest quality;

(d)     Review and reassess at least annually any material changes in the business of the Corporation relevant to the accounting and financial reporting processes of the Corporation;

(e)     Review and discuss with the Auditors and management, before release, the audited financial statements and the Management's Discussion and Analysis proposed to be included in the Corporation's Annual Report on Form 10-K. Make a recommendation to the Board whether or not the audited financial statements should be included in the Corporation's Annual Report on Form 10-K;

(f)     In consultation with the Auditors and management, consider and review at the completion of the annual examinations and such other times as the Committee may deem appropriate: (a) The Corporation's annual financial statements and related notes; (b) The Auditors' audit of the financial statements and their report thereon; (c) The Auditors' reports regarding critical accounting policies, alternative treatments of financial information and other material written communications between the Auditors and management; and (d) any deficiency in, or suggested improvement to, the

procedures or practices employed by the Corporation as reported by the Auditors in their annual management letter;

(g)     Periodically and to the extent appropriate under the circumstances, it may be advisable for the Committee, with the assistance of the Auditors and/or management, to consider and review the following: (a) Any significant changes required in the Auditors' audit plan; (b) Any difficulties or disputes with management encountered during the course of the audit; (c) The adequacy of the Corporation's system of internal financial controls; (d) The effect or potential effect of any regulatory regime, accounting initiatives or off-balance sheet structures on the Corporation' s financial statements; (e) Any correspondence with regulators or governmental agencies and any employee complaints or published reports that raise material issues regarding the Corporation's financial statements or accounting policies; and (f) Other matters related to the conduct of the audit, which are to be communicated to the Committee under generally accepted auditing standards and pursuant to the requirements of the PCAOB;

(h)     Monitor compliance with the Corporation's Code of Ethics, investigate any alleged breach or violation of the Ethics Code, and enforce the provisions of the Ethics Code. The Committee shall review the Ethics Code at least annually to ensure that the provisions of the Ethics Code remain up-to-date and that all such provisions are being complied with by the officers, directors and employees of the Corporation; and

(i)     Investigate any matter brought to its attention within the scope of its duties, with the power to retain separate outside counsel and other advisors, solely representing and reporting to the Committee, for this purpose if, in its judgment, that is appropriate.

## SUBSTANTIVE ALLEGATIONS

**Background**

34.     According to SEC filings, FTE is a leading provider of innovation technology providing smart network connectivity platforms, infrastructure, and buildings. FTE provides end-to-end design, build, and support solutions for state-of-the-art networks, data centers, residential and commercial properties.  FTE's services are predicated on smart design and consistent standards that reduce deployment costs and accelerate delivery of leading edge projects and

services.  The Company works with Fortune 100/500 companies, including some of the world's leading telecommunications and IT services providers as well as REITs and media providers.

35.     FTE acquired Benchmark in April 2017 for approximately $75,000,000. Benchmark, which was under the day-to-day control of Sacramone and Brian McMahon ("McMahon"), reporting generates $350 million in annual revenue.  FTE funded its purchase of Benchmark with cash, FTE stock and financing from the former owners of Benchmark, namely Sacramone and McMahon.  The seller financing was principally through FTE promissory notes held by Sacramone and McMahon.

36.     On April 20, 2017, FTE issued Series A convertible promissory notes, in the aggregate principal amount of $12,500,000 to Sacramone and McMahon, which were due to mature on April 20, 2019.  On April 20, 2017, FTE issued Series B Notes in the aggregate principal amount of $30,000,000 to Sacramone and McMahon, which were due to mature on April 20, 2020. On April 20, 2017, FTE issued Series C Notes in the aggregate principal amount of $7,500,000 to Sacramone and McMahon, which matured on October 20, 2018.

37.     Following the purchase of Benchmark in April 2017, Sacramone became a member of the FTE Board.  As a director, Sacramone signed FTE public filings, including the 2017 10-K, that provided financial reports which were subsequently restated.  Sacramone subsequently became the President and interim Chief Executive Officer of FTE in July 2019. Following his assuming a management position, Sacramone signed public filings in that capacity as well.

38.     As required by FTE bylaws, any equity issuance required the approval of the FTE Board and that a board meeting to consider such equity may only be avoided if all FTE Directors approve in writing the proposed equity issuance.  Section 6.1 of the applicable bylaws states that

"The issuance or sale by the Corporation of any shares of its authorized capital stock of any class, including treasury shares, shall be made only upon authorization by the Board."

39.     From December 2016 through January 2019, FTE raised millions of dollars of capital through the issuance of more than 71 short-term convertible notes.  The notes were entered into on a rolling basis to fund the payment of the prior short term note coming due.  As part of the documentation accompanying each of the convertible notes was a Confession of Judgment signed by Lethem on behalf of FTE and its subsidiaries.  Several of the convertible notes were also accompanied by a signed Consent of FTE Directors.  The Individual Defendants, including Pelleschi, Lethem, Martin, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, and O'Hare,  knew or should have known of the equity issuances and Confessions of Judgment that could trigger defaults on other FTE financial obligations, as they were required to be approved by the FTE Board and were the source of FTE's day-to-day funding.

40.     The various convertible notes were either entered into without board approval or based upon fraudulent execution of signatures.  In either event, Individual Defendants, Pelleschi, Lethem, Martin, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare failed their fiduciary obligations of good faith and loyalty by failing to inform themselves of FTE's financing requirements and sources, take steps to ensure that FTE's repeated and substantial equity issuances were properly authorized, and that their electronic signatures would not be improperly used.

41.     No systems of checks and balances were implemented to assure that equity issuance would be done without board approval.  FTE has asserted that the convertible note holders should have known that the signatures and consent were invalid.  So too, should have Pelleschi, Sacramone, Ferguson, Inargiola, Mitchell, and O'Hare known.  Only by sticking their heads in the

sand could these same FTE board members pretend that equity issuances were complying with FTE's bylaw requirements.

42.     Similarly, FTE management, including Pelleschi (Chief Executive Officer), Lethem (Chief Financial Officer), and Martin (Chief Operating Officer) knew or should have known that equity issuances were unauthorized and not in compliance with FTE bylaws. Pelleschi, Lethem, and Martin as members of FTE management knew or certainly should have known the equity issuances were necessary to conduct FTE's on-going business and each held a fiduciary obligation to act in the best interests of FTE and its shareholders. Further, FTE management failed to disclose to FTE shareholders the Company was financing its operations through rolling equity issuance that cost FTE million of dollar and diluted its stock.

43.     For example, FTE sold an aggregate principal amount of $22.7 million in convertible notes between January 2017 and January 2019, of which approximately $9.8 million of principal and interest has been converted into 5,186,306 shares of Company common stock through March 19, 2019. The convertible notes were issued net of original issuance discounts and deferred finance costs totaling approximately $2.8 million and the Company received approximately $19.9 million in net proceeds. As of March 19, 2019, the Company has issued an aggregate of 5,448,287 shares of its Common Stock to investors relating to inducement to enter into, and the conversion of principal and accrued interest owed under, certain of the convertible notes. By repeatedly entering into at least the 71 undisclosed equity issuances, FTE was forced to pay extraordinary transaction fees, issue stock awards dilutive to FTE and its existing stockholders, permit the triggering of defaults on FTE's other financial obligations. In addition, FTE's management entered into a number of merchant cash advance loan arrangements over the last several years, which were never disclosed to FTE shareholders.

44.     Individual Defendants Palleschi, Lethem, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, and O'Hare during their tenures on the FTE Board further breached fiduciary duties of candor by not requiring that the existence of the convertible note equity issuances be publicly disclosed.   For example, Palleschi, Lethem, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare all signed the 2078 SEC Form 10-K ("2017 10-K") filed on April 17, 2018, which contained the financial reporting that was subsequently restated. The 2017 10-K also represented that internal controls were effective, which was subsequently disavowed by FTE.   These defendants had fiduciary obligations to review the public filings for accuracy prior to signing such documents.   In fact, the 2017 10-K disclosed that "the Board and the Audit Committee regularly discuss with management the Company's major risks exposures, their potential financial impact on the Company, and the steps taken to monitor and control those risks."  The fact that SEC public filings did not disclose the existence of the equity issuances and notes was a failure of the Board to implement sufficient internal controls and independently stand as a breach of the fiduciary duty of candor.

45.     In advance of a shareholder meeting scheduled for December 26, 2018 annual meeting, FTE disseminated a SEC Form 14A Proxy Statement ("2018 Proxy Statement") seeking the election of Palleschi, Sacramone, Ferguson, Ingargiola, Mitchell and O'Hare as directors.  FTE shareholders were also asked to approve the formation of a staggered board service whereby Palleschi and Ferguson would remain as directors until the 2021 annual meeting and Ingargiola and O'Hare would remain directors until the 2020  annual meeting.  The 2018 Proxy Statement states that "from January 1, 2017 through the date of this Annual Report on Form 10-K, there have been no related-party transactions, except for the executive officer and director compensation

arrangements described in the section 'Executive Compensation' and as described below." The executive compensation described refers to compensation for Palleschi, Lethem, and Martin.

46.     The 2018 Proxy Statement, in seeking the approval of the Board nominees, stated that the FTE Board "determined that O'Hare, Ingargiola, Ferguson and Mitchell were independent as that term is defined in the listing standards of the NYSE American. In making these determinations, our Board has concluded that none of our independent directors has an employment, business, family or other relationship which, in the opinion of our Board, would interfere with the exercise of independent judgment in carrying out the responsibilities of a director."

47.     In fact, this representation in the Proxy Statement was false because at least Ingargiola and Ferguson were subsequently found to have business relationships with FTE through private (and compensated) work performed on behalf FTE.  Ingargiola received approximately $200,000 in undisclosed compensation and benefits for meeting with FTE investors. Similarly, Ferguson received approximately $50,000 for properties subleased to FTE that was known but not disclosed when the 2018 Proxy Statement was issued.

48.     The 2018 Proxy Statement confirmed that Palleschi was not considered independent because of his role as Chief Executive Officer of the Company, and Sacramone was not considered independent because of his role as President of Benchmark, FTE's primary wholly owned-subsidiary.

49.     All directors at the time of the issuance of the 2018 Proxy Statement (Pelleschi, Sacramone, Ferguson, Ingariola, Mitchell, and O'Hare) breached their fiduciary duties of candor by endorsing the appointment of themselves as directors without assuring that the Proxy Statement contained accurate representations about the individual board members and FTE's business.

50.     On January 24, 2019, FTE filed an SEC Form 8-K that publicly disclosed that Palleschi was placed on a "leave of absence" and that Anthony Sirotka, FTE's Chief Administrative Offer, would serve as the Interim CEO.  This Form 8-K also disclosed that Martin resigned as Chief Operations Offer effective January 25, 2019.  No reasons were given for the change of status for Palleschi or Martin.  Information as to why Palleschi was placed on leave of absence and why Martin left was known or should have been known to all FTE Directors at the time, but not disclosed to FTE stockholders.

51.     On March 12, 2019, FTE filed a SEC Form 8-K that disclosed that Lethem had resigned as Chief Financial Officer effective March 11, 2019 pursuant to the terms of a separation agreement, executed on February 26, 2019, wherein FTE agreed to pay Lethem a severance payment of $87,500, to have been paid in equal installments over a six-month period. Although individual directors knew or should have known why Lethem resigned, no reason was given to FTE stockholders for Lethem's departure from FTE.  Far from pursuing claims against Lethem and taking any action over the past year, no justification has been provided by any of the Individual Defendants for the payment of the $87,500 to an officer who defendants accused of a pervasive fraud against the company.

52.     On March 22, 2019, FTE filed an SEC Form 8-KA that revealed for the first time that an investigation was being conducted into the issuance, accounting and disclosure of convertible notes.  FTE stated that the investigation "will be overseen by the Audit Committee (Ingargiola and O'Hare), which consists solely of independent directors, related to: whether Company management had the proper authorization to issue the [convertible notes] and the related shares issuable upon conversion of the [convertible notes], as well as certain other debt instruments and equity transactions; issues related to the accounting for and disclosure of certain expenses

incurred by management; and the appropriateness and disclosure of certain related party transactions." Ingargiola was subsequently removed as an FTE director after certain related-party transactions were revealed comprising her independence. O'Hare subsequently resigned from the Audit Committee and left the FTE Board in October 2019.

53.     Additionally, the March 22, 2019 Form 8-KA disclosed that "as of March 19, 2019, the Company has issued an aggregate of 5,448,287 shares of its Common Stock to Investors relating to inducement to enter into, and the conversion of principal and accrued interest owed under, certain of the Notes. In addition, the Company has issued an aggregate of 78,914 shares of its Common Stock to Investors relating to the exercise of Common Stock Warrants to purchase its common stock issued to Investors as inducement to enter into the Notes."

54.     On March 25, 2019, FTE received a public reprimand letter form the NYSE based on noncompliance with Exchange regulations Sections 301 and 713. Specifically, the reprimand letter states that "the Company failed to file an application to obtain Exchange approval for the issuance of additional shares of the Company's common stock as required under Section 301 of the Company Guide and failed to obtain shareholder approval of an issuance that exceeded 20% of the Company's common stock outstanding, as required under Section 713 of the Company Guide. The shares at issue are described in the Company's Form 8-K/A filed on March 22, 2019."

55.     On March 29, 2019, the Company signed an Amendment to an Executive Employment Agreement (the "Sirotka Amendment") with Sirotka in connection with his position as Interim Chief Executive Officer. The principal terms of the Sirotka Amendment provide in relevant part for:

- a three-year term of employment, beginning on March 1, 2019, unless extended or sooner terminated in accordance with its provisions;
- an annual base salary of $350,000 and a minimum five percent (5%) salary increase each calendar year;

- a minimum performance bonus equal to thirty percent (30%) of Mr. Sirotka's base salary for each calendar year; and
- a stock grant of 295,000 restricted shares of Company common stock under the Company's 2017 Omnibus Incentive Plan.

56.     On April 1, 2019, FTE reported that Shiah was appointed by Directors Sacramone (Conflicted), Ferguson (Conflicted), Ingargiola (Conflicted), Mitchell, and O'Hare to the FTE Board and stated that Shiah was not assigned to any Board committees.

57.     On the same date, FTE filed a SEC Form 12b-25 providing notification that the SEC Form 10-K would not be filed on a timely basis.  The document stated "as previously disclosed, an executive committee of the Company's Board of Directors is conducting an independent investigation, to be overseen by the Audit Committee (Ingargiola and O'Hare), related to: whether Company management had the proper authorization to issue certain convertible notes and the related shares issuable upon conversion of these convertible notes, as well as certain other debt instruments and equity transactions; issues related to the accounting for and disclosure of certain expenses incurred by management; and the appropriateness and disclosure of certain related-party transactions.  As a result of these developments, the Company is unable to complete the preparation of its consolidated financial statements and related disclosures to be included in the Form 10-K, to have them properly certified by its principal executive officers, and reviewed by its independent registered public accounting firm in order to timely file the Form 10-K."  Again, FTE Board members Ingargiola and Ferguson were not independent directors because of their undisclosed related-party transactions with FTE.

58.     On April 4, 2019, it was revealed that FTE had received an communication from its auditor and concluded that previously issued audited financial statements for 2017 and the interim reviews of the financial statements for the periods ended March 31, June 30, and September

30, 2018 and 2017, should no longer be relied upon. "The conclusion to prevent future reliance on the aforementioned financial statements resulted from the determination that such financial statements failed to properly account for certain convertible notes and other potentially dilutive securities. Specifically, the Company identified a potential issue related to the accounting related to certain convertible notes and other potentially dilutive securities the Company issued in 2017, 2018, and 2019." Defendants Pelleschi, Lethem, Martin, Sacramone, Ingargiola, Ferguson, Ingargiola, Mitchell, and O'Hare knew or should have known of the financial non-reliance based on the convertible notes and other dilutive securities from the auditor letter.

59. On April 9, 2019, it was revealed that Palleschi had sought mandatory arbitration pursuant to his employment agreement alleging contractual breach of employment claims and seeking $11.3 million in damages. FTE purportedly filed an arbitration counterclaim in the breach of contract proceeding. However, neither FTE nor any of the Individual Defendants brought any lawsuit for breach of fiduciary duties against Pelleschi or any of the Individual Defendants. The arbitration complaint and any counterclaim filed are not matters of public record. On April 6, 2019, FTE issued a notice of non-renewal of the Palleschi contract under the terms of the employment agreement.

60. On April 17, 2019, FTE received a notice from the NYSE Regulation staff of the New York Stock Exchange ("NYSE") indicating that the Company is not in compliance with NYSE's continued listing requirements under the timely filing criteria outlined in Section 1007 of the NYSE American Listed Company Manual as a result of the Company's failure to timely file its Annual Report on Form 10-K for the fiscal year ended December 31, 2018 (the "2018 Form 10-K"). The last SEC Form 10-K filed by FTE was in April 2018.

61.     On April 24, 2019, FTE and certain of its wholly-owned subsidiaries, agreed in principal with Sacramone, McMahon, Lateral Juscom Feeder LLC ("Lateral"), and several lenders party thereto (together with Lateral, the "Lenders") to a framework to restructure FTE's outstanding debt (the "Debt Restructuring"), that originally was entered into when FTE acquired Benchmark.

62.     The parties agreed to negotiate in good faith to finalize the documents and agreements governing the principal terms of the Debt Restructuring, including, among other terms and conditions:

- Extensions and modifications to the Company's existing senior and super senior debt, including certain automatic extensions to forbearance periods and maturity dates (as described in the Company's Form 8-K filed on April 22, 2019), as well as revisions to the applicable interest rates and payment schedules;

- The issuance of preferred stock of the Company to the Benchmark Noteholders with voting rights equivalent to a majority of the fully diluted shares of the Company;

- The issuance of common stock and warrants for the Company's common stock to Lateral and its affiliates;

- The provision of customary registration rights to Lateral;

- The provision of representation on the Board of Directors for each of Lateral and the Benchmark Noteholders; and

- The restructuring of certain outstanding convertible notes.

63.     The press release did not disclose whether Sacramone was part of the negotiation on behalf of FTE, Benchmark, or both.  In a verified cross-petition filed in litigation between FTE and one of its lenders (*Eagle Equities, LLC v. FTE Networks, Inc, et al.*, New York Supreme Court, New York County, Index No. 158196/2019), Sacramone verified that he made "repeated inquiries of Palleschi, Lethem and other Board members, including the audit committee, [and they] provided no truthful information regarding the spending or borrowing habits of FTE, nor of the true financial

performance of FTE." Sacramone confirmed that Palleschi and Lethem departed FTE "based upon allegations of egregious misconduct and wrongdoing, which FTE learned of December 2018 and early 2019, relating, in part, to the issuance of the Convertible Note." Sacramone conceded that "despite SEC provisions and rules that require public companies to prepare periodic and other reports that accurately and fairly reflect the transactions and dispositions of company assets, FTE's SEC filings did not make mention of the notes." Of course, Sacramone did not acknowledge that he and his fellow board members signed the public filings that failed to make mention of the notes.

64.     Sacramone's verification further acknowledges that "there was no legitimate business purpose for the constant rollovers of convertible notes." At the time, the FTE Board consisted of Palleschi, Shiah, Ferguson, Ingargiola, Mitchell, O'Hare, and Sacramone. The Audit Committee consisted of Ingargiola and O'Hare. Neither Sacramone, nor any other Individual Defendant sought to hold themselves liable for failing to exercise their fiduciary duties of good faith, loyalty, and candor.

65.     On April 29, 2019, findings of the investigation into issues concerning the convertible notes were presented to the FTE Board comprised of Pelleschi, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, and O'Hare. Additional Board meetings were conducted on May 7, 2019, May 8, 2019, and May 13, 2019 at which the findings of the investigation were presented to the same FTE Board. Despite these findings, no director (Palleschi, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, nor O'Hare) took any action to bring action against management or themselves for breach fiduciary duties owed to FTE.

66.     On May 11, 2019, Palleschi notified the Company of his resignation from the Company's Board and as the Company's Chief Executive Officer, effective May 10, 2019. On May 13, 2019, the Board accepted his resignation from the Board without compensation and without a release and terminated Palleschi's employment as the Company's Chief Executive Officer. Sirotka continued to serve as the Company's interim Chief Executive Officer.

67.     On May 14, 2019, Defendant Ingargiola resigned from the Audit Committee (leaving O'Hare as the sole member of the FTE Audit Committee) without publicly stating why she was resigning.  Ingargiola retained her seat on the FTE Board.

68.     On May 23, 2019, FTE sent a letter to all FTE shareholders of record seeking to retroactively validate corporate acts not in compliance with Title 7 of the Nevada Revised Statutes or articles of incorporation or bylaws of a company. The letter stated that an internal investigation concluded that various corporate acts were "found not to be in compliance with governing documents."  A lengthy list of non-compliant acts was attached as an exhibit to this letter.  FTE Board members (including Sacramone, Shiah, Ferguson, Ingargiola, Ferguson, Mitchell, and O'Hare) thereafter attempted to ratify the non-compliant acts.  Even so, the non-compliant acts constitute breaches of the Individual Defendants' fiduciary duties of loyalty by entering into the non-compliant loans and the duty of candor for failing to disclose the existence of such loans and conditions under which they were taken.

69.     On May 29, 2019, FTE filed an SEC Form 8-K announcing that four directors left the FTE Board.  The four directors were Ingargiola, Ferguson, Mitchell, and O'Hare.  With Palleschi's departure from the Board on May 11, 2019, the only two remaining Board members were Sacramone and Shiah.

70.     The May 29, 2019 SEC Form 8-K stated for the first time that "while conducting diligence on Board compensation in connection with the previously announced debt restructuring, the Company concluded that Ingargiola provided services to the Company at the request of Palleschi to engage with potential investors and lenders to help secure financing, in addition to her services as a Director, during 2017, 2018 and early 2019, and was compensated for such services. Ingargiola received payments totaling $101,112 during 2017, $76,999 during 2018, and $4,596

during 2019, as well as employment benefits over the same period totaling $15,225.00, and a car allowance expense from April through September 2017 estimated to be $3,600. The 2017 and 2018 compensation amounts were $71,112 and $46,999 higher, respectively, than the terms of Ingargiola's original board service agreement, exclusive of the benefits mentioned above. As a result of her receipt of compensation for such additional services, Ingargiola did not meet the independence standards of NYSE American LLC and Rule 10A-3 under the Securities Exchange Act of 1934 for the purpose of serving on the Audit Committee of the Board."

71.     The May 29, 2019 SEC Form 8-K stated also that "during 2017 and 2018, Christopher Ferguson received a total of $130,500 of compensation in connection with his service as a Director. Further, Ferguson received payments of $26,500 between March 21, 2017 and August 17, 2017 for real estate that he sub-leased to the Company." The SEC Form 8-K continued "while the Company has not been able to determine that Ferguson was not independent for Audit Committee purposes during his service, Ferguson has agreed that he will return to the Company the amount that exceeds what he was due under his board service agreement, currently estimated at $74,000 and subject to potential reduction for amounts due for 2016 and agreed to for 2019, through a reduction of the amount of monies that he loaned to the Company in the amount of $613,162.22 (inclusive of interest)." There has been no public disclosure that Ferguson was ever a member of the FTE Audit Committee. In fact, the most recent Proxy Statement states that Ferguson is only a member of the Compensation Committee.

72.     The May 29, 2019 Form 8-K did not disclose the reasons for Mitchell's and O'Hare's departure from the FTE Board.

73.     On June 8, 2019, Sacramone and Shiah appointed Defendants Kingsley and Berini to the FTE Board.  Although Kingsley and Berini would only serve as FTE Directors for four

months, they took no action to bring action against any member of management or FTE Board members for their breach of fiduciary duties owed to FTE and its shareholders.

74.     On June 13, 2019, the Company confirmed in public filings that 2017 yearly and 2018 quarterly financial statements should not be relied upon because such financial statements failed to properly account for certain convertible notes and other potentially dilutive securities.  In that same release, it was reported for the first time that 2016 financial reports should also not be relied upon.  It was expected that all financial statements will be restated and confirmed that an SEC investigation has been launched.  Despite these findings, Sacramone, Shiah, Kingsley, and Berini took no action to bring suit against Palleschi, Lethem, Martin, Ferguson, Ingargiola, Mitchell, O'Hare or themselves for the failure to properly execute their fiduciary duties owed to FTE and its shareholders.

75.     The June 13, 2019 SEC Form 8-K also revealed that "under the Company's bylaws, equity issuances require authorization from the FTE Board.  The investigation team informed the Company that it had found that proper FTE Board authorization was lacking for certain equity issuances.  Specifically, the investigation found issuances that were supported by resolutions that did not comport with Nevada state law and the Company's bylaws, issuances for which no FTE Board authorization existed, and issuances that were supported by falsified FTE Board authorizations under which a former Company officer copied previous electronic signatures of FTE Board members onto new documents."  Directors Sacramone, Shiah, Kingsley, and Berini knew or should have known of the investigatory findings, but continued to take no action to seek redress of the harms.

76.     It was also reported that issues related to the accounting for and disclosure of certain expenses incurred by management, as well as the appropriateness and disclosure of certain related

party transactions were under review including "significant personal expenses incurred by former officers that were charged to the Company, including: multiple trips on chartered jets to vacation destinations in the U.S., South America and Europe, as well as to a family home; the use of Company vehicles largely if not solely for personal purposes; incidental personal charges on Company credit cards; and Company payments for credit card bills in the names of former officers." There were also instances of at least one large share issuance to a related party that was not reported timely and instances in which cash transfers were made to former officers with little or no support. Again, FTE Directors knew or should have known of these investigatory findings and facts concerning related-party payments and took no action to prevent, detect, or redress such malfeasance and the resulting harms to FTE, in contravention of their fiduciary obligations.

77.     On June 13, 2019, it was also reported that Defendant Sacramone would become FTE's Interim Co-Chief Executive Officer.

78.     On June 24, 2019, Plaintiff filed the initial complaint alleging breach of fiduciary duties against the Individual Defendants.

79.     On June 27, 2019, it was announced that Richard Omanoff was appointed as a Director by Sacramone and Shiah effective three days earlier, June 24, 2019 (the date of the filing of Plaintiff's complaint). Omanoff was also named as chair of the Nominating and Corporate Governance Committee. On the same day, it was announced that Irving Rothman was appointed a Director by Sacramone and Shiah effective as of June 25, 2019. Rothman was also named to the Audit Committee and the Nominating and Corporate Governance Committee. Rothman resigned three months later on September 16, 2019.

80.     On June 27, 2019, it was also announced that Anthony Sirotka was placed on administrative leave pending the outcome of the previously announced independent investigation, described in a SEC Form 8-K/A filed on March 22, 2019.

81.     On July 2, 2019, FTE completed its previously announced debt restructuring by entering into an amended and restated Credit Agreement (the "Credit Agreement Amendment") by and among FTE and its subsidiaries (including Benchmark), Lateral, and the Lenders and by amending and restating its Series A convertible notes and Series B promissory notes issued to Sacramone and McMahon  and a super-senior bridge loan note issued to Sacramone.

82.      Pursuant to the Credit Agreement Amendment, terms of the $12.9 million super-senior bridge loan (the "Lateral Bridge Loan") were amended to extend the maturity to September 30, 2020, to amend the interest rate to 12% per annum payable in cash, to add a 4% extension fee to the principal amount (subject to reduction) and to provide for monthly amortization payments based on available cash flow.  In addition, the terms of the $37.9 million senior debt were amended to extend the maturity to April 30, 2021, amend the interest rate to 12% per annum payable in cash, to add a 4% extension fee to the principal amount thereof (subject to reduction) and to include monthly amortization payments based on available cash flow.

83.     On August 30, 2019, certain judgments in the aggregate amount of approximately $4.2 million were entered against FTE in favor of six holders of convertible notes used on a rolling basis to fund FTE's day-to-day business.  FTE's failure to satisfy, vacate or stay first judgment to be entered during the 30-day period following the entry of such judgement on July 31, 2019 constituted an event of default under the  Credit Agreement Amendment among the Company and its subsidiaries, Jus-Com, Inc. and Benchmark, as borrowers, Lateral, and the Lenders.  The occurrence and continuation of the event of default under the Credit Agreement Amendment gave

the Lenders the right to accelerate the repayment of all amounts borrowed under the Credit Agreement Amendment, which totaled approximately $54,518,260.46 as of August 31, 2019, among other remedies.  FTE admitted that the payment obligations under the Credit Agreement Amendment were secured by substantially all of FTE's assets, including its main subsidiary Benchmark.

84.     On September 12, 2019, FTE issued a letter to FTE shareholders regarding its debt restructuring. The full text of the letter from President and Interim CEO Fred Sacramone follows.

Dear Fellow Shareholders:

The Company has been expending significant efforts on many fronts to bring the Company current in its filings under the Securities Exchange Act of 1934, as amended. Management has been assisting outside counsel and consultants with the internal investigation of certain actions that was requisitioned by our Board of Directors and announced in a Form 8-K on March 22, 2019, preparing the restated financial statements for our 2016 and 2017 fiscal years and the financial statements for our 2018 fiscal year, and working with our outside auditors in their audit of such financial statements. Most importantly, we have been preparing the amended and most recent annual reports on Form 10-K and quarterly reports on Form 10-Q that will be filed with the Securities and Exchange Commission (the "SEC") to make those financial statements available to the public and to include other disclosures that are required by the applicable federal securities laws. This has been a major effort on the part of management and we currently expect to make those filings with the SEC in the fourth quarter of this year.

85.     On September 16, 2019, Rothman resigned as a member of the FTE Board and the FTE Audit Committee due to the "time requirements of other commitments required for service on the Board."

86.      On September 17, 2019, the Board appointed Berini to FTE's Audit Committee to replace the vacancy left by Rothman's resignation from the Audit Committee.  A position that he would hold for 22 days.

87.      On October 2, 2019, Anthony Sirotka, the Co-Interim Chief Executive Officer of FTE, formally resigned.

88.     On October 9, 2019, Defendants Shiah, Kingsley, and Berini left the FTE Board, effective immediately.  No reasons were given for the *en mass* FTE Board exit.  At the time of their October 9, 2019 departure ending their short-lived stint: (i) Shiah was a member of the Audit Committee, the Compensation Committee and the Nominating and Corporate Governance Committee of the Board; (ii) Kingsley was a member of the Audit Committee; and (iii) Berini was a member of the Audit Committee and Compensation Committee.

89.     On October 10, 2019, FTE consented to a Proposal for Surrender of Collateral and Strict Foreclosure (the "Strict Foreclosure"), from Lateral, Lateral builders, LLC and Benchmark Holdings, LLC and  (collectively "Foreclosing Lenders"), and the other lenders, pursuant to which, effective on October 10, 2019, the Foreclosing Lenders took possession and ownership of FTE's primary subsidiary, Benchmark, by means of a strict foreclosure, triggered by the judgments obtained by lenders on the convertible notes.

90.     In addition, FTE announced it had received a proposal from an unnamed entity whereby an undisclosed REIT  would exchange $4 billion of unlevered real estate related assets in exchange for FTE common stock, preferred stock and warrants.  Pursuant to stated terms, Benchmark would surrender Series H shares as part of the exchange.  Series H shares, however, are held by Sacramone rather than Benchmark, which is a subsidiary of FTE.  Negotiation of Sacramone's interest in FTE's shares puts him in conflict as to whose interests he is advancing.  It is unclear whether Sacramone negotiated or consented to the terms of the Strict Foreclosure and related business combination for FTE's benefit or his own.

91.     The Strict Foreclosure makes no mention of FTE's fiduciary duty claims against the Individual Defendants.

92.     On October 18, 2019, Sacramone and Omanoff left the FTE Board.

32

93.     The Individual Defendants breached their fiduciary obligations of loyalty, care and candor by: permitting FTE to operate without sufficient internal controls; taking no action to prevent, detect, or redress such malfeasance and the resulting harms to FTE, in contravention of their fiduciary obligations; concealing the related-party transactions that otherwise rendered so-called independent directors as interested parties; and failing to assure disclosure of material financing terms and share issuances. The Individual Defendants likewise did not implement appropriate internal controls that would have required the proper consideration, approval, and payments under FTE financing agreements, such as the convertible notes, and/or otherwise forced the disclosure of all related-party interests held by management and the FTE Board.

## DAMAGES TO THE COMPANY

94.     As a direct and proximate result of the Individual Defendants' conduct, FTE has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

(a)     Losses incurred in connection with the internal and SEC accounting investigation;

(b)     Losses incurred in connection with restatement of FTE's financial reporting from 2016 to 2019;

(c)     Losses incurred with obtaining compliance with NYSE regulations concerning the issuance of FTE stock that exceeded 20% of the Company's pre-existing common stock;

(d)     Losses incurred in connection with the suspension and possible delisting of FTE's securities from the NYSE;

(e)     Losses incurred with the strict foreclosure against FTE's assets, including Benchmark;

33

(f)     Losses incurred in payment of undisclosed compensation and benefits to members of FTE's management and Board members;  and

(g)     Losses incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to FTE.

95.     In addition, FTE's business, goodwill, and reputation with its business partners, regulators, and shareholders have been gravely impaired. The Company still has not fully admitted the nature of its false statements and the true condition of its business.  The credibility and motives of management  and the Board are now in serious doubt.

96.     The actions complained of herein have irreparably damaged FTE's corporate image and goodwill.  For at least the foreseeable future, FTE will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that FTE's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

97.     Plaintiff brings this action derivatively in the right and for the benefit of FTE to redress injuries suffered, and to be suffered, by FTE as a direct result of breaches of fiduciary duty by the Individual Defendants, waste of corporate assets, unjust enrichment, and violations of Section 14(a) of the Exchange Act.  FTE is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

98.     Plaintiff will adequately and fairly represent the interests of FTE in enforcing and prosecuting its rights.

99.     Plaintiff has continuously been a shareholder of FTE at times relevant to the wrongdoing complained of and is a current FTE shareholder.

100.    The FTE board was conflicted and unable to make an independent judgment to bring suit against itself or members of management for the breaches of loyalty, good faith, and candor owed to FTE.  Despite the admitted wrongdoing of some defendants, no legal action has been taken against them to recover for breaches of fiduciary duty.

101.    When this action was filed, FTE's Board consisted of Defendants Sacramone, Shiah, Kingsley, and Berini.  All of whom have now left the FTE Board.  Plaintiff did not make any demand on these FTE Directors to institute a fiduciary action because such a demand would be a futile, wasteful, and useless act, because Sacramone, Shiah, Kingsley, and Berini are conflicted as it cannot reasonably be expected that they could make the decision to sue themselves or other board members for their actions, conduct, and part in the fiduciary breaches.  These directors were personally interested in the outcome of whether or not a lawsuit is brought and therefore it reasonable to believe that they could not independently act.

## DEFENDANT SACRAMONE

102.    At all relevant times, Sacramone's principal employment was as President of Benchmark, which became a wholly-owned subsidiary of FTE after Benchmark was acquired in 2017.  Sacramone was FTE's Interim Co-Chief Executive Officer.  On February 12, 2019, FTE, by and through Benchmark, entered into an Amended and Restated Employment Agreement with Sacramone (the "Sacramone Employment Agreement"), providing certain terms and conditions in connection with Sacramone's position at Benchmark. The principal terms of the Sacramone Employment Agreement provide in relevant part for:

- a two-year term of employment, ending on December 31, 2021 (the "Initial Term"), unless extended or sooner terminated in accordance with its provisions;

- an annual base salary of $500,000 and a guaranteed annual incentive bonus equal to five percent (5.0%) of the EBITDA of Benchmark for such calendar year; and

- an extended non-compete period, which shall run from February 12, 2019 until the later of (a) five years or (b) 12 months immediately following the termination of Mr. Sacramone's employment for whatever reason.

104. In additional to his management role, Sacramone held an interest in $42 million promissory notes negotiated by Palleschi and issued by FTE to Sacramone and his Benchmark partner, McMahon. Sacramone restructured the FTE debt on April 24, 2019 and had entered into numerous sequential forbearance agreement pushing off the date for payment under the various credit instruments. Sacramone could not be expected to take any action that would compromise or delay payment of his $42 million investment in FTE by bringing a fidyuciary action against himself or fellow FTE Board members.

105. Defendant Sacramone also participated in Board meetings and decisions and therefore is personally liable for his actions. Sacramone attended various board meetings prior to June 11, 2019 that discussed the conduct for which Individual Defendants are being investigated and therefore Sacramone's actions are subject to the breach of fiduciary duties alleged herein. Sacramone also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors or the related-party interests held by other defendants.

106. Defendant Sacramone made the misrepresentations through the public filings they reviewed and signed including FTE's SEC Form 8-K's filed since June 27, 2019. Sacramone

failed to ensure the integrity of the Company's internal controls, allowing the misleading statements to be disseminated in the Company's SEC filings and other disclosures.

107.    FTE in its Annual Proxy Statement, filed December 10, 2018, acknowledges that Sacramone is not independent.

108.    For these reasons, Sacramone was not considered to be, nor was in fact, an independent director of FTE.

DEFENDANT SHIAH

109.    Defendant Shiah participated in Board meetings and decisions since April 1, 2019 and therefore will be personally liable for his actions.  He attended various board meetings that discussed the conduct for which Individual Defendants are being investigated and therefore Shiah's actions are subject to the breach of fiduciary duties alleged herein.  Shiah also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors.

110.    Shiah was appointed to the FTE Board by Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare and never ratified by a shareholder vote.  As set forth herein, the majority of those board members were conflicted as result of disclosed and undisclosed business dealings with FTE, Benchmark, and Sacramone.

111.    Shiah served only six months on the FTE Board but did not seek to institute any legal action against any of the Individual Defendants (including himself), instead choosing to leave the FTE Board.

DEFENDANT KINGSLEY

112.    Kingsley served only four months but participated in board meetings and discussions and her actions subject her to personal liability.  She attended various board meetings that discussed the conduct for which Individual Defendants are being investigated and therefore Kingsley's actions are subject to the breach of fiduciary duties alleged herein.  Kingsley also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors.

113.    Kingsley was appointed by Sacramone and Shiah, after the resignation of Ferguson, Ingargiola, Mitchell, and O'Hare.  Kingsley was therefore beholden to Sacramone and Shiah. Kingsley's board appointment was never ratified by a shareholder vote.

114.    Further, despite attending board and committee meetings at which the wrongdoing at FTE was discussed, Kingsley failed to take legal action against any of the Individual Defendants (including herself) instead, choosing to leave the FTE Board.

DEFENDANT BERINI

115.    Berini was on the FTE Board for only four months but participated in board meetings and discussions and his actions subject him to personal liability.  He attended  various board meetings that discussed the conduct for which Individual Defendants are being investigated and therefore Berini's actions are subject to the breach of fiduciary duties alleged herein.  Berini also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors.

116.    Berini was appointed by Sacramone and Shiah, after the resignation of Ferguson, Ingargiola, Mitchell, and O'Hare.   Berini was therefore beholden to Sacramone and Shiah. Berini's board appointment was never ratified by a shareholder vote.

117.    Further, despite attending board and committee meetings at which the wrongdoing at FTE was discussed, Berini failed to take legal action against any of the Individual Defendants (including himself), instead choosing to leave the FTE Board.

118.    Sacramone, Shiah, Kingsley, and Berini are not disinterested directors who can consider pre-suit demand without consideration of their own actions, personal interests, and loyalties held to other board members.   Thus, demand is excused.

119.    If defendant Omanoff is considered a director for purposes of considering demand futility, the majority of the board is still conflicted.   Omanoff was appointed by Sacramone and Shiah, who themselves are conflicted.   Omanoff's board appointment was never ratified by a vote the FTE shareholders.   Omanoff left the FTE Board on October 18, 2019.

## COUNT I

### Against All Individual Defendants for Breach of Fiduciary Duty

120.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

121.    This claim is brought against Defendants Pelleschi, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, O'Hare, Martin, and Lethem.

122.    Each Individual Defendant owes and owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of FTE's business and affairs, particularly with respect to issues as fundamental as public disclosures.

123.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of FTE.

124.    In breach of their fiduciary duties owed to FTE, the Individual Defendants willfully participated in and caused the Company to expend unnecessarily its corporate funds, rendering them personally liable to the Company for breaching their fiduciary duties.

125.    In particular, the Individual Defendants knowingly or recklessly made untrue statements and/or permitted the Company's public filings, disclosures, and statements to misleadingly report revenue and the Company's overall prospects.

126.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, FTE has sustained and continues to sustain significant damages.  Including direct monetary damages, exposure to liability from securities litigation and a loss of goodwill in the capital markets.  As a result of the misconduct alleged herein, defendants are liable to the Company.

## COUNT II

### Against All Defendants for Unjust Enrichment

127.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

128.    This claim is brought against Defendants Pelleschi, Sacramone, Ferguson, Ingargiola, Mitchell, O'Hare, Martin, and Lethem.

129.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of FTE.  The Individual Defendants were unjustly

enriched as a result of the incentive compensation they received while breaching fiduciary duties owed to FTE.

130.    According to the incentive plan approved on consent order rather than shareholder vote, FTE management and directors were eligible to receive incentive compensation. As the incentive payments were based in part on FTE's inaccurate financials that were restated, the directors receive a benefit to which they knew that they were not entitled.

131.    Plaintiff, as a stockholder and representative of FTE, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

132.    Plaintiff, on behalf of FTE, has no adequate remedy at law.

## COUNT III

### Against All Defendants for Violations of Section 14 of the Securities Exchange Act of 1934

133.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

134.     This claim is brought against Defendants Pelleschi, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare.

135.    Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange Act of 1934, provides that no proxy statement shall contain "any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

136.     Specifically, FTE's Proxy Statement filed in December 2018 violated §14(a) and Rule 14a-9 because they knowingly, recklessly, or negligently concealed the related-party transactions and failed to properly disclose the authorization, payment, and disclosure of convertible notes.  This resulted in the inflation of the Company's revenue and misrepresented the Board's actual activities while soliciting votes to re-elect and compensate directors who were breaching their fiduciary duties.  In the exercise of reasonable care, the Individual Defendants should have known that the statements contained in the proxy statement were materially false and misleading.

137.     The misrepresentations and omissions in the 2018 Proxy Statement were material to Company shareholders in voting on the proxy statement. The 2018 Proxy Statement solicited shareholder votes for: (i) director nominees; and (ii) implementation of a staggered board; and (iii) ratification of the appointment of the Company's independent auditor. The proxy statement was an essential link in the accomplishment of the continuation of defendants' continued violation of their fiduciary duties and their continued receipt of incentive compensation awards.

138.     Individual Defendants Pelleschi, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare were beneficiaries of the concealed information in the 2018 Proxy Statement and retained their FTE Board seats and incentive compensation.

139.     Pelleschi, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare were beneficiaries of a 2017 Incentive Compensation Plan that was the subject of a January 2018 written consent in lieu of a stockholder meeting.  On written consent of majority stockholders (including without a shareholder meeting, Individual Defendants obtained ratification of the 2017 Omnibus Incentive Plan which states that "all of our directors, officers and employees are eligible to participate in, and receive awards under the 2017 Incentive Plan."  The written consent also

allowed for the increase of FTE shares from 8,000,000 to 100,000,000. The compensation awarded to the Individual Defendants was based upon false reporting of FTE's financial condition and the stated lack of related-transactions. Further, the written consent specifically references the fact that the 2017 Incentive Compensation Plan was administer by a majority of "independent directors of the Board." However, once it came to light that Ingargiola and Ferguson has disabling conflicts, such representation about independence was false.

140.   The Company was damaged as a result of the defendants' material misrepresentations and omissions in the proxy statements.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of FTE, demands judgment as follows:

A.   Declaring that plaintiff may maintain this action on behalf of FTE and that plaintiff is an adequate representative of FTE;

B.   Against all of the Individual Defendants and in favor of FTE for the amount of damages sustained by FTE as a result of the Individual Defendants' breaches of fiduciary duties and unjust enrichment;

C.   Declaring that Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to FTE;

D.   Directing FTE to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect FTE and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to FTE's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.   a proposal to strengthen FTE's controls over financial reporting;

2.   a proposal to strengthen FTE's controls over related-party transactions;

3.   a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.   a proposal to strengthen FTE's oversight of its disclosure procedures;

5.   a provision to control insider transactions; and

6.   a provision to permit the stockholders of FTE to nominate at least three candidates for election to the Board;

E.   Awarding to FTE restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

F.   Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

G.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury.

Dated: October 28, 2019            **GLANCY PRONGAY & MURRAY LLP**

Matthew M. Houston
Benjamin I. Sachs-Michaels
712 Fifth Avenue
New York, New York 10019
Telephone:  (212) 935-7400
Facsimile: (212) 756-3630
E-mail: mhouston@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Joseph Cohen
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 210-9160
Email: jcohen@glancylaw.com

Jack Zwick
225 Broadway, Suite 1440
New York, NY 10007
Telephone: (212) 385-1900
Facsimile: (212) 385-1911
Email: jack@zwickfirm.com

*Attorneys for Plaintiff Efraim Barenbaum IRA*

## VERIFICATION

I, Efraim Barenbaum, do hereby verify that I am a holder of common stock of FTE Networks, Inc. through my Individual Retirement Account, and was a holder of such common stock at the time of the wrongs complained of in the foregoing Verified Amended Shareholder Derivative Complaint ("Complaint"). I have authorized the filing of the Complaint. I have reviewed the Complaint and all of the averments contained in the Complaint regarding me are true and correct upon my personal knowledge and, with respect to the remainder of the averments, are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Date:   October 28, 2019

Efraim Barenbaum