UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                 │
│ DOCUMENT                                  │
│ ELECTRONICALLY FILED                      │
│ DOC #:_____                   │
│ DATE FILED:_9/30/2020___                  │
└─────────────────────────────────────────┘
```

EFRAIM BARENBAUM, IRA, derivatively on behalf of
Nominal Defendant FTE NETWORKS, INC.,

                            Plaintiff,

              -against-

MICHAEL PALLESCHI, FRED SACRAMONE,
JAMES SHIAH, CHRISTOPHER FERGUSON, LUISA
INGARGIOLA, BRAD MITCHELL, PATRICK
O'HARE, DAVID LETHEM, LYNN MARTIN,
JEANNE KINGSLEY, and STEPHEN BERINI

                            Defendants,

              -and-

FTE NETWORKS, INC.,

                            Nominal Defendant

1:19-cv-05913 (MKV)

**OPINION AND ORDER
GRANTING MOTIONS TO
DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiff Efraim Barenbaum, IRA, brings this action derivatively on behalf Nominal

Defendant FTE Networks, Inc. ("FTE") to recover for alleged malfeasance by current and former

executives of the company and members of the Board of Directors.  Specifically, Barenbaum

alleges that between December 2016 and January 2019, several executives and directors of the

company purported to issue convertible notes on the company's behalf, without consultation or

signoff from the Board of Directors or notice to shareholders.[1]  In addition, Barenbaum claims

that the ensuing investigation of the note issuances revealed that FTE incorrectly had reported

and accounted for personal expenses of several company executives.  These issues led to the

---

[1] While the Plaintiff in this action is Mr. Barenbaum's Individual Retirement Account ("IRA"), through which he
purchased and held FTE common stock since 2016, *see* Am. Compl. ¶ 11, the Court will refer to Plaintiff throughout
as "Barenbaum."

resignation of most of the company's executives and directors and the de-listing of FTE common stock on the New York Stock Exchange.  Defendants have moved to dismiss Plaintiff's Amended Complaint primarily on two grounds: failure to allege demand futility for Plaintiff's derivative standing and failure sufficiently to plead the causes of action in the Amended Complaint.  For the reasons that follow, the motions are GRANTED.

## BACKGROUND

A.    *Factual Background*

The facts as stated herein are taken from Plaintiff's Amended Complaint, ECF #54, unless otherwise stated, and are assumed to be true for the purposes of this motion.[2]  *See Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) ("At the motion to dismiss stage, we accept these allegations as true and draw all inferences in [Plaintiff's] favor."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2009)).

Nominal Defendant FTE Networks, Inc. is a Nevada corporation with its principal offices located in New York City.  Prior to the events described in the Amended Complaint, the company was in the business of designing, building, and supporting networking infrastructures for the technology and telecommunications industries.[3]  Am. Compl. ¶ 1.  Until 2019, FTE's common stock was traded on the New York Stock Exchange ("NYSE").  Am. Compl. ¶ 12. While the Amended Complaint is not clear, the FTE Board of Directors appears to have a seven-member maximum.  Am. Compl. ¶¶ 13-21, 65-67, 69.  At various times during the period

---

[2] Citations to the Amended Complaint are referred to herein as "Am. Compl. ¶ __."

[3] Following the fraud described in the Amended Complaint, FTE was forced to abandon the telecommunications business and has restructured its business around ownership and maintenance of rental home properties in the United States.

relevant to this case, however, the Board had as few as four active members.  *See* Am. Compl. ¶ 74.

As part of its expansion strategy, in 2017, FTE acquired Benchmark Builders, Inc. ("Benchmark"), a general contracting and construction management firm, for $75 million.  Am. Compl. ¶ 8, 35, 102.  The purchase was funded by approximately $42 million in promissory notes issued to Benchmark's President, Defendant Fred Sacramone, and his partner in Benchmark, non-party Brian McMahon, with the remainder paid in cash and FTE common stock.  Am. Compl. ¶ 35-36.  Following the acquisition, Sacramone was added to the FTE Board of Directors.  Am. Compl. ¶ 37.

Beginning in December 2016, shortly before the Benchmark acquisition, and continuing until January 2019, individuals purporting to act for FTE fraudulently entered into 71 short-term convertible notes with lenders (the "Notes").  Am. Compl. ¶ 39.  Later-issued Notes seemingly were issued only to pay the amounts due on the earlier-issued Notes.  Am. Compl. ¶ 39.   In total, the company was caused to issue Notes in an aggregate principal amount of $22.7 million.  Am. Compl. ¶ 43.  Of that amount, as of March 2019, approximately $9.8 million of principal and interest on the Notes had been converted into 5,186,306 shares of FTE common stock.  Am. Compl. ¶ 43.

The Notes allegedly were issued without proper authorization from the FTE Board of Directors, by using forged signatures on the issuing documents, and in violation of the NYSE rules on equity issuances.  Am. Compl. ¶¶ 3, 38, 40, 54.  Each Note was accompanied by a Confession of Judgment signed by FTE's former Chief Financial Officer, Defendant David Lethem, with some Notes also including a signed Confession of Judgment purportedly from FTE's Directors.  Am. Compl. ¶ 39.  Moreover, until an investigation began in March 2019, the existence of the Notes was not disclosed to FTE's shareholders.  Am. Compl. ¶ 41-42.

The alleged fraud concerning the Notes was revealed in early 2019.  That year, on January 24, the company announced that Defendant Michael Palleschi was placed on an administrative "leave of absence" from his role as FTE's Chief Executive Officer.  Am. Compl. ¶ 50.  The same announcement also disclosed that Defendant Lynn Martin, until that point FTE's Chief Operations Officer, was resigning.  Am. Compl. ¶ 50.  Less than two months later, FTE disclosed that then-CFO Lethem would also resign.  Am. Compl. ¶ 51.  No reason initially was publicized for the spate of resignations in the company's management.  Am. Compl. ¶ 50-51. Instead, FTE waited until March 22, 2019 to disclose the existence of the Notes and an investigation by the company's Audit Committee into "whether Company management had the proper authorization to issue the [Notes] and the related shares issuable upon conversion of the [Notes], as well as certain other debt instruments and equity transactions."  Am. Compl. ¶ 52.

As originally announced, the Audit Committee conducting the investigation included Defendants Luisa Ingargiola and Patrick O'Hare, both purportedly independent Directors of FTE.  Am. Compl. ¶ 52.  When the results of the investigation were announced however, FTE revealed that a third Director, Defendant Christopher Ferguson, had been added to the Audit Committee.  Am. Compl. ¶ 71.  While the investigation was ongoing, on April 4, 2019, FTE received a notice from its external auditor stating that because of the questions related to the Notes, FTE financial statements for 2017 and 2018 should not be relied upon by any investor. Am. Compl. ¶ 58.

On April 29, 2019, the findings of the Audit Committee were presented to the FTE Board.  Am. Compl. ¶ 65.  The committee concluded that "proper FTE Board authorization was lacking for certain equity issuances. Specifically, the investigation found issuances that were supported by resolutions that did not comport with Nevada state law and the Company's bylaws, issuances for which no FTE Board authorization existed, and issuances that were supported by

4

falsified FTE Board authorizations under which a former Company officer [Defendants Palleschi and/or Lethem] copied previous electronic signatures of FTE Board members onto new documents." Am. Compl. ¶ 75.  In addition, the Audit Committee determined that Palleschi had used FTE funds to pay for significant personal expenses, including family trips on chartered jets to various locations in the United States, South America, and Europe, use of company vehicles for personal purposes, and personal charges on FTE credits cards.  Am. Compl. ¶ 76.  Palleschi also unilaterally raised his salary by over $1,000,000 without consulting the FTE Board.  Am. Compl. ¶ 76.

The FTE Board considered the Audit Committee's finding at meetings on April 29, May 7, May 8, and May 13, 2019.  Am. Compl. ¶ 65.  The Board did not institute litigation against Palleschi, Lethem, or any other current or former executive or Board member for the wrongdoing.  Am. Compl. ¶¶ 59, 65.  Instead, the company filed a counterclaim in a previously-filed arbitration initiated by Palleschi for breach of his employment contract.  Am. Compl. ¶ 59.  As a result of the widespread fraud, the company announced that all of its published financial statements for 2016, 2017 and 2018 should not be relied on, that a federal Securities and Exchange Commission ("SEC") investigation had been launched, and, ultimately, that the company's stock was delisted from the NYSE.  Am. Compl. ¶¶ 12, 74.

Several executives and Board members departed FTE before, during, and after the investigation.  At the beginning of 2019, the FTE Board consisted of Defendants Sacramone, Ferguson, Ingargiola, Mitchell, O'Hare, and Palleschi, by virtue of his position as CEO.  Am. Compl. ¶ 13-14, 16-19.  Ferguson, Ingargiola, Mitchell, and O'Hare resigned on May 29, 2019.  Am. Compl. ¶ 69.  Palleschi's previously-announced "administrative leave" was converted into a "for cause" termination in May 2019.  Am. Compl. ¶ 66.  Finally, as noted above, COO Martin and CFO Lethem had resigned before the Audit Committee investigation was announced.  Am.

5

Compl. ¶ 50-51.  Later, Sacramone confirmed in at least one court filing that the departures of

Palleschi and Lethem were "based upon allegations of egregious misconduct and wrongdoing,

which FTE learned of [sic] December 2018 and early 2019, relating, in part, to the issuance of

the Convertible Note[s]."  Am. Compl. ¶ 63.

New Board members were appointed as others resigned.  First, Defendant Shiah was

appointed to the Board on April 1, 2019.  Am. Compl. ¶ 15.  Later, following the mass

resignations on May 29, 2019, Defendants Kingsley and Berini were appointed to the Board on

June 8, 2019, and non-parties Richard Omanoff and Irving Rothman were appointed to the Board

on June 24 and June 25, 2019, respectively.[4]  Am. Compl. ¶¶ 73, 79.  However, the tenure of the

new Board members was short.  Rothman resigned from the Board in mid-September 2019, Am.

Compl. ¶ 85, and on October 9, 2019, Shiah, Kingsley, and Berini resigned.  Am. Compl. ¶ 88.

Finally, Omanoff and Sacramone resigned from the Board on October 18, 2019.  Am. Compl.

¶ 92.  Plaintiff does not name the current members of the FTE Board.

In addition to the turnover in company management, FTE's Board also attempted to take

actions to ameliorate further damage to the company.  First, the Board ratified issuances of the

Notes under applicable provisions of Nevada corporate law presumably in order to eliminate

arguments (and litigation costs) over whether the Notes were valid.  Am. Compl. ¶ 68.  Second,

the company restructured its debt (both the Notes and the debt acquired as part of the Benchmark

acquisition), agreeing to extensions of the maturity and payments.  Am. Compl. ¶ 81-82.  Finally,

---

[4] The Amended Complaint states two different dates of appointment for Kingsley and Berini: June 8 and June 10. *Compare* Am. Compl. ¶ 20-21 *with* Am. Compl. ¶ 73.  However, Kingsley and Berini admit to the earlier date of appointment.  *See* Memorandum in Support of New Board Motion to Dismiss, ECF #60, at 5.  In any event, this discrepancy is not relevant to the issues framed in the motions to dismiss.  Plaintiff also disputes the effective date of Omanoff's appointment, which was announced on June 27, 2019, but was retroactive to June 24, 2019 (the date of the Original Complaint in this action).  To the extent that fact is in dispute, it does not affect the outcome of the present motions as Mr. Omanoff's vote for the purpose of demand futility would not change the balance of the relevant Board of Directors.  *See infra* at 18-20.

because of judgments previously entered against FTE for defaults on the Notes, FTE consented to foreclosure and a Proposal for Surrender of Collateral. Am. Compl. ¶ 89-90. Specifically, FTE consented to relinquish ownership of Benchmark, which secured the Notes following the restructuring. Am. Compl. ¶ 89-90.

B.    *Procedural History*

Plaintiff filed the Original Complaint in this action on June 24, 2019. *See* ECF #1 ("Original Complaint"). In response to an initial round of motions to dismiss filed by Defendants, Barenbaum filed an Amended Complaint on November 1, 2019. *See* ECF #54. Several Defendants again filed a series of motions to dismiss, which were joined in whole or in part by other Defendants. *First*, Defendants Sacramone, Shiah, Kingsley, and Berini, the Defendants who were members of the Board when the Original Complaint was filed, move to dismiss the Amended Complaint on the grounds that Barenbaum failed to allege demand futility and that the claims against these Defendants fail to state a claim. *See* ECF #59-61 (the "New Board Motion").[5] *Second*, Defendant Lynn Martin moves to dismiss the Amended Complaint on identical grounds, *i.e.* that the Amended Complaint does not adequately allege demand futility and that the claims against him fail to state a claim. *See* ECF #63-64 ("Martin Motion"). *Third*, Defendants Ferguson, Ingargiola, Mitchell, and O'Hare filed a motion to dismiss the Amended Complaint, joining in the arguments in the New Board Motion about demand futility and asserting separate arguments that the Amended Complaint fails to state a claim against them. *See* ECF #66-67 ("Old Board Motion"). *Fourth*, Defendant Palleschi filed a joinder in the New Board Motion and in Martin's Motion, arguing that Plaintiff's claims against him should be dismissed for failure to allege demand futility and for failure to state a claim. *See* ECF #68

---

[5] As used herein, citations to "New Board Motion at __." or similar citations refer to the Memorandum of Law in Support of the respective motion.

("Palleschi Joinder"). *Finally*, Nominal Defendant FTE Networks, Inc. filed a joinder in the New Board Motion to Dismiss the Amended Complaint on the ground that Plaintiff did not make a pre-suit demand on the FTE Board of Directors. *See* ECF #62 ("FTE Joinder"). Plaintiff opposed each of the motions and joinders. *See* ECF #73-77. Defendants submitted replies in connection with each of the motions. *See* ECF #85-89.[6]

Defendants' motions largely make two types of arguments. First, all of the motions argue that Barenbaum's Amended Complaint fails to allege demand futility sufficient to support his standing to sue derivatively and does not provide the particularized facts in support of demand futility, as required by Federal Rule of Civil Procedure 23.1. *See, e.g.*, New Board Motion at 7-10; Old Board Motion at 3; Martin Motion at 3-8; Palleschi Joinder at 1; FTE Joinder at 2. Second, each of the motions argues that the Amended Complaint fails to state a claim against the relevant Moving Defendants. *See, e.g.*, New Board Motion at 10-17; Martin Motion at 8-17; Old Board Motion at 4-21; Palleschi Joinder at 2.

After the motions to dismiss were briefed, Plaintiff filed a motion asking the Court to take judicial notice of FTE's publicly-filed revised 2018 10-K, filed with the SEC on May 11, 2020, and FTE's publicly-filed Answer with Affirmative Defenses and Counterclaims in a lawsuit brought by Defendant Lethem in Florida state court. *See* ECF #99-100. Defendants largely consent to the Court taking judicial notice of the documents, but disagree with the conclusions Plaintiff urges the Court to draw from them. *See* ECF #101-03. As discussed below, the Court grants the motion for judicial notice only to the limited extent discussed herein.

---

[6] Defendant David Lethem has appeared *pro se* in this action and filed an Answer to the Complaint on July 7, 2020. *See* ECF #94.

8

## ANALYSIS

### I.      Plaintiff's Motion for Judicial Notice

By separate motion [ECF #99], Plaintiff asks the Court to take judicial notice of certain documents generated after the motions to dismiss were filed.  Plaintiff argues that statements in the documents constitute admissions by the Company—purportedly relevant to the motions to dismiss—of several of the allegations in the Amended Complaint, including that Defendants failed properly to oversee Palleschi and Lethem's issuance of the Notes and failed to ensure the company's controls were effective.  *See* Memorandum in Support of Motion for Judicial Notice at 4-6.

Specifically, Plaintiff moves with regard to documents generated during post-motion to dismiss efforts by FTE to clean-up its records and management following the fraud that was the subject of the SEC investigation and is alleged the Amended Complaint.  Part of those efforts involved restating and confirming the Company's financial statements from the 2016-2018 period during which Palleschi, Lethem, and others allegedly defrauded FTE.  The efforts culminated with the May 11, 2020 filing with the SEC of FTE's Annual Report for the 2018 fiscal year.  *See* Ex. A to the Memorandum in Support of Plaintiff's Motion for Judicial Notice [ECF #100] ("2018 Annual Report").  As part of its statement, FTE reported that, as a result of the actions of former FTE executives and directors, the company's internal controls were not effective, that the Notes were issued without proper Board authorization, and that FTE Management had not evaluated the company's control policies since 2018 or, in some cases, 2017.  *See* 2018 Annual Report at 35-37.

Plaintiff also asks the Court to take judicial notice of an Answer with Affirmative Defenses and Counterclaims filed on February 10, 2020 by FTE in a lawsuit filed against the company by Defendant Lethem.  *See* Ex. B to Memorandum in Support of Plaintiff's Motion for

Judicial Notice [ECF #100] ("FTE Florida Answer").  The Company's counterclaims in that case alleged that Lethem fraudulently did not act in the best interest of FTE and fraudulently induced FTE to agree to terms of a severance agreement with him in 2019.  *See* FTE Florida Answer at 9-12.

Defendants do not dispute that the documents Plaintiff puts before the Court were publicly filed, but instead argue that the probative value of the documents is low, and that the Court cannot take notice of them for the truth of any of the statements contained therein.  *See, e.g.*, Old Board Brief in Opposition to Motion for Judicial Notice [ECF #102] at 3.  The New Board Defendants suggest that if the Court takes judicial notice of the documents, the statements contained therein cannot bolster the allegations in Plaintiff's Amended Complaint at all, and certainly not enough to escape dismissal.  *See* New Board Response to Motion for Judicial Notice [ECF #101] at 4-5.  Meanwhile, the Old Board Defendants suggest that none of the information Plaintiff points to is new or was unavailable at the time Plaintiff filed his Amended Complaint, and, thus, it is meaningless to the pending motions to dismiss.  *See id.*

A court considering a motion to dismiss a complaint "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted). When a motion for judicial notice is made in connection with a motion to dismiss though, a court may take judicial notice of reports filed with the SEC and filings in other courts, but should not use the content of those documents as affirmative proof of the statements contained therein.  *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir.1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and

related filings.");  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) ("[A] district court may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2))).  In other words, judicial notice of these documents allows the Court to acknowledge that statements were made, without regard for the truth of the statements themselves.

   In this case, the Court grants the Plaintiff's motion for judicial notice, but only to the extent that the Court will acknowledge that the 2018 Annual Report and the FTE Florida Answer were filed and contain the statements therein.  The statements cannot be used as support for Plaintiff's allegations that any Defendant failed in complying with their duties to FTE, since that use would require the Court to assume the truth of the statements contained in the filings.  This outcome, of course, means that the documents provide little aid to Plaintiff's claims, since no Party disputes that the statements in the 2018 Annual Report or the FTE Florida Answer actually were made.  Nonetheless, Barenbaum's Motion for Judicial Notice is GRANTED to the extent stated herein.

## II.   <u>Defendants' Motions to Dismiss</u>

   The Court now turns to the merits of Defendants' Motions to Dismiss the Amended Complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and

draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

While several motions and joinders were filed, the motions collectively raise only two sets of issues. *First*, Defendants argue that Barenbaum lacks standing to bring the claims in the Amended Complaint (all of which are pleaded derivatively) because he has not pleaded demand futility. Defendants claim that the relevant Board for the purpose of pleading demand futility is the Board in place at the time the Amended Complaint was filed. *See* New Board Motion 7-10; Martin Motion at 3-7; Old Board Motion at 3-4. In the alternative, Defendants argue that if some earlier Board of Directors is relevant to the analysis, Barenbaum has not pleaded facts sufficient to overcome the particularity requirement in Federal Rule of Civil Procedure 23.1. *See* Reply in Support of New Board Motion at 2-9. *Second*, Defendants each argue that the claims against them should be dismissed for failure to state a claim. *See* New Board Motion at 10-17; Old Board Motion at 4-20; Martin Motion at 8-17; Palleschi Joinder at 2. For the reasons stated below, Barenbaum's Amended Complaint is dismissed.

A.     *Barenbaum Has Failed To Plead Demand Futility*

Barenbaum has filed the present action as a derivative suit on behalf of FTE. "[T]he purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (citation and internal quotation marks omitted). Because the corporation's Board of Directors generally manages the corporation's affairs, "equity courts established as a precondition for the suit that the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* at 96. In other words, a derivative suit

like this one may only proceed if the plaintiff first asks the corporation to bring the claims itself or pleads why such a demand would be futile. The latter option is the concept of demand futility.

The Federal Rules of Civil Procedure provide that a plaintiff in a derivative action must plead with particularity "any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). In other words, in a derivative case such as this, the Plaintiff must plead specific facts regarding his demand on the Board of Directors in a derivative case or his specific reasons for failing to do so. While federal pleading standards govern this case in federal court, the substantive law of demand futility is supplied by the state of incorporation. *RCM Secs. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1326 (2d Cir. 1991) ("Rule 23.1 is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question. However, the adequacy of those efforts is to be determined by state law absent a finding that application of state law would be inconsistent with a federal policy underlying a federal claim in the action, a qualification of no relevance to the instant matter."). Here, the state of incorporation is Nevada, and Nevada substantive corporations law applies.[7]

Barenbaum has admitted that he did not make a demand on the FTE Board, and, thus, he must plead that such a demand would be futile. *See* Am. Compl. ¶ 6. Whether a plaintiff has pleaded demand futility is a question of standing; without doing so, the plaintiff has no standing to proceed with the case, and it must be dismissed. *See Shoen v. SAC Holding Corp.*, 122 Nev.

---

[7] While the federal rule governs pleadings filed in federal court, the Court notes that Nevada also has codified a version of the particularity pleading requirement, stating "The complaint must also set forth with particularity the efforts of the plaintiff to secure from the board of directors or trustees and, if necessary, from the shareholders such action as the plaintiff desires, and the reasons for the plaintiff's failure to obtain such action or the reasons for not making such effort." Nev. Rev. Stat. § 41.520(2).

621, 641 137 P.3d 1171, 1184 (2006) ("A shareholder's failure to sufficiently plead compliance with the demand requirement deprives the shareholder of standing[.]"), *overruled in part on other grounds*, *Chur v. Eighth Judicial District Ct.*, 136 Nev. 68, 458 P.3d 36 (Nev. 2020); *Strickland v. Hongjun*, No. 10-cv-05445 (MGC), 2011 WL 2671895, at \*1 (S.D.N.Y. July 8, 2011) (applying Nevada law and noting that demand futility is an element of standing in a derivative case); *see also Sagarra Inversiones, S.L. v. Cementos Portland Valderrivas, S.A.*, 34 A.3d 1074, 1080-81 (Del. 2011) ("[P]resuit demand obligations [are] governed by the derivative standing rules . . . .").

Nevada has adopted the law of Delaware in connection with evaluating demand futility. *Shoen*, 122 Nev. at 641 ("The Delaware court's approach is a well-reasoned method for analyzing demand futility and is highly applicable in the context of Nevada's corporations law. Hence, we adopt the test described in *Aronson*, as modified by *Rales*."). Specifically, the Nevada courts have adopted the tests set forth by the Delaware Supreme Court in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) and *Rales v. Balsband*, 634 A.2d 927, 934 (Del. 1993). To determine whether demand futility is adequately alleged, these precedents require a two-part analysis. First, the Court must determine if the actions challenged by Plaintiff's derivative claims were a result of a business decision by the company's Board of Directors. *See Schoen*, 122 Nev. at 641. If they were, the *Aronson* test governs; if not, *Rales* applies. Under *Aronson,* "in those cases in which the directors approved the challenged transactions," the plaintiff must provide *particularized allegations* that show "a reasonable doubt that the directors were disinterested or that the business judgment rule otherwise protects the challenged decisions." *Id.* (citing *Rales*, 634 A.2d at 933-34). But, under the *Rales* rule, "in those cases in which the challenged transactions did not involve board action or the board of directors has changed since the transactions," the plaintiff must plead *particularized facts* to show "a reasonable doubt that

the board can impartially consider a demand." *Id.*  The Nevada courts have noted that these analyses are functionally the same—both essentially ask "whether directorial interest in the challenged act or the outcome of any related litigation negates impartiality to consider a demand." *Id.* at 641 n.62.  The Plaintiff must plead specific facts showing "interestedness" on the part of a majority of the Board of Directors to establish demand futility.  *See id.* at 638-39; *accord La. Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1058 (9th Cir. 2016) (applying Nevada law).  Where the Board of Directors has an even number of members, "majority" equals one half or more.  *Schoen*, 122 Nev. at 642 n.62 ("Thus, when considering whether the "majority" of an even-numbered board is incapable of impartially considering a demand under the tests for demand futility, the "majority" equals at least one-half of that board.").

In order to evaluate whether Plaintiff has adequately pleaded demand futility by considering whether the FTE Board was interested under the *Aronson-Rales* test, however, the Court must determine which individuals actually constituted the Board of Directors at the relevant time.  Since the question of director "interestedness" is fact specific, the identity of each member of the Board in question is important.  In this case, the constant turnover on the FTE Board of Directors in 2019 makes this question particularly vexing.

In general, the relevant Board of Directors for the purposes of demand futility is the one in place at the time of the filing of the operative complaint.  *See, e.g.*, *Weinfeld v. Minar*, No. 3:14-cv-00513(RCJ)(WGS), 2016 WL 4487844, at *3 (D. Nev. Aug. 24, 2016) ("The relevant board is the board as it was constituted when the shareholders filed their amended complaint." (citing *Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006))).  Here, that would mean that Barenbaum needs to plead demand futility in regard to the Board of Directors in place on November 1, 2019 when he filed his Amended Complaint.  *See* ECF # 54.  But, Plaintiff may

plead demand futility as to an earlier iteration of the FTE Board of Directors (*i.e.* the one in place when the Original Complaint was filed) if the derivative claims in the Amended Complaint already were "validly in litigation" before the Amended Complaint was filed.  *See Braddock v. Zimmerman*, 906 A.2d 776, 778-79 (Del. 2006).  Plaintiff then only would be required to plead demand futility as to the Board in place as of the June 24, 2019, date of the Original Complaint.

 To meet the "validly in litigation" standard, a plaintiff must show that (1) the original complaint was properly pleaded as a derivative action; (2) the original complaint satisfied the legal test for demand excusal; and (3) the acts or transactions that are the subject of the amended complaint are essentially the same as those challenged in the original complaint.  *Id.* at 786.  If all three conditions are present, no new demand (or pleading of demand futility) is required.  *See id.*; *Harris v. Carter*, 582 A.2d 222, 231-32 (Del. Ch. 1990).  However, claims are not "validly in litigation" where the complaint was dismissed; in those circumstances, plaintiffs must plead demand futility as of the date of any amended complaint.  *See, e.g.*, *Braddock*, 906 A.2d at 786 ("*A fortiori* for Rule 23.1 demand purposes, we hold a complaint that has been dismissed is not validly in litigation.").  Finally, where an amended complaint was filed in response to a motion to dismiss, and, thus, no decision on the first motion was rendered, the Court must consider whether the previous complaint could have survived the motion to dismiss.  *Id.* at 779 ("[T]he term 'validly in litigation' means a proceeding that *can or has* survived a motion to dismiss." (emphasis added)); *accord In re Nyfix, Inc. Derivative Litig.*, 567 F. Supp. 2d 306, 311 (D. Conn. 2008) ("[T]he filing of an amended complaint may trigger a new requirement to make demand if the earlier complaint could not have survived a motion to dismiss, even if it had not actually been dismissed.").

 While the Nevada courts have not previously adopted the "validly in litigation" standard specifically, several cases applying Nevada law have adopted other portions of the *Braddock*

opinion from which it emerges.  *See Wynn*, 829 F.3d at 1058 (citing *Braddock*, 906 A.2d at 786);

*see Weinfeld*, 2016 WL 4487844 at *4 (D. Nev. Aug. 24, 2016); *In re Amerco Derivative Litig.*,

127 Nev. 196, 231 (2011).  The Court has found no indication that Nevada would not follow the

*Braddock* test.  Indeed, this conclusion is consistent with at least one other court's determination.

*See, e.g.*, *Apple, Inc. v. Superior Court*, 18 Cal. App. 5th 222, 247, 227 Cal. Rptr. 3d 8, 27 (Cal.

Ct. App. 2017) ("[C]ourts in jurisdictions that look to or follow Delaware law with respect to

determining demand futility have consistently applied *Braddock*.").

In this case, Barenbaum's Amended Complaint was filed in November 2019.  Barenbaum

does not attempt to plead demand futility as to the Board of Directors that existed at that time.

*See* New Board Motion at 9.  Instead, Barenbaum asserts that the Board in place at the time he

filed his Original Complaint in June 2019 is relevant because the claims in the Amended

Complaint were validly in litigation based on the Original Complaint.  *See* Opposition to New

Board Motion, ECF #73 ("New Board Opp.") at 13.  While Barenbaum is correct that the claims

in the Original and Amended Complaints are largely identical and arise from the same

transactions, the Original Complaint did not adequately plead demand futility and would not

have survived the motions to dismiss which were mooted by the filing of the Amended (now

operative) Complaint.  As a result, the claims were not validly in litigation when the Amended

Complaint was filed.

As an initial matter, the claims in the Amended Complaint cover the same conduct and

timeframe as the claims in the Original Complaint.  *Compare* Original Complaint ¶¶ 2, 4, 29-48,

*with* Am. Compl. ¶¶ 2, 34-52.  And, the Defendants in the Amended Complaint are named in

identical causes of action as in the Original Complaint.  *Compare* Original Complaint ¶¶ 70-84,

*with* Am. Compl. ¶¶ 1220-140.  In fact, rather than adding claims, the Amended Complaint

deletes a cause of action.  *See* Original Complaint ¶¶ 85-88 (including a corporate waste claim).

If the Original Complaint adequately had alleged demand futility (and would otherwise have survived a motion to dismiss), Barenbaum's claims would have met the threshold elements of the "validly in litigation" analysis.  But, as noted, the Original Complaint did not allege demand futility as to the FTE Board of Directors in place when it was filed.

As stated above, demand futility requires factual allegations that indicate that half or more of the Board is "interested" and therefore unable to impartially consider a demand.  *See Schoen*, 122 Nev. at 638-39, 641 n.62.  In June 2019, when the Original Complaint was filed, the FTE Board of Directors consisted of five members: Sacramone, Shiah, Kingsley, Berini, and Omanoff.  Thus, in order to establish demand futility, Plaintiff's Original Complaint needed to establish that three or more of those Board members were incapable of disinterested consideration of Barenbaum's claims.  Plaintiff's Original Complaint includes some allegations that Sacramone and Shiah were interested.  *See* Original Complaint ¶¶ 60-69.  However, the Original Complaint included no allegations whatsoever of interestedness on behalf of Directors Berini, Kingsley, or Omanoff.  On that basis alone, since Plaintiff fails to plead any facts to infer interestedness on behalf of a majority of the Board, Plaintiff's Original Complaint fails to allege demand futility.

Perhaps to avoid this outcome, Plaintiff now disputes whether Omanoff was a member of the FTE Board on June 24, 2019 when he filed the Original Complaint.  *See* New Board Opp. at 11, 13 n.8.  If he was not, the Board of Directors only would have contained four members, and Plaintiff need only allege interestedness as to two of the four to support a finding that demand would be futile.  In support of this assertion, Plaintiff states that Omanoff was not appointed to the Board until June 27, 2019, retroactive to June 24.[8]  New Board Opp. at 11, 13 n.8.  The Court

---

[8] While ordinarily the Court would not consider facts included in a brief and not in the complaint, that is impossible here.  The thrust of Plaintiff's argument is that when he filed the Original Complaint on June 24, 2019, the public

does not need to determine whether this retroactive appointment was valid, however, because even if Omanoff was not on the FTE Board, Plaintiff still has not alleged demand futility as to half of what would have been a four-member Board.

Specifically, Plaintiff's allegations in the Original Complaint regarding Shiah do not allege any specific facts demonstrating interestedness as required by Federal Rule of Civil Procedure 23.1 and Nevada law. *See* Original Complaint ¶ 68. Instead, Plaintiff merely alleged that "Defendant Shiah was appointed to and participated in Board decisions since April 1, 2019. He attended various board meetings prior to June 11, 2019 that are the subject of the conduct for which FTE is being investigated. Shiah also sought ratification of the wrongful conduct by the FTE Board and failed to assure that there was ongoing disclosure of the process of approval and negotiation of funding sources such as convertible notes held by other directors." Original Complaint ¶ 68. Simply stating that Shiah was involved in some of the actions Plaintiff contests is not sufficient to plead demand futility. This is especially true because in order to show a Director's interestedness based on his or her potential liability, Nevada law is clear that a Director's negligence does not defeat the presumption of good faith applied to his actions. *See Chur v. Eighth Judicial District Ct.*, 136 Nev. 68, 73-74, 458 P.3d 336, 340-41 (Nev. 2020) (holding that director's gross negligence does not expose him or her to liability for decisions and cannot create demand futility); *see also Wynn*, 829 F.3d at 1061-62 ("Even if the complaint can be read to allege with particularity that the directors were negligent . . . such would not be sufficient."). Because Plaintiff failed to plead specific facts to show Shiah's interestedness, and at most alleges negligence, the Amended Complaint did not allege that Shiah was conflicted for

---

was not aware that Omanoff was on the FTE Board. Indeed, his appointment was not made until June 27, 2019, three days after the Original Complaint was filed. As a result, Plaintiff could not have included any allegations regarding Omanoff in the Original Complaint, as he had no reason to know Omanoff was on the Board on the day it was filed.

the purposes of demand futility.  At most then, Barenbaum's Original Complaint could be construed to have pleaded that one Director out of five—Sacramone—was interested.[9]  This does not constitute adequate pleading of demand futility, and means that Plaintiff's claims were not placed "validly in litigation" by the Original Complaint.

Despite this, Plaintiff attempts to bolster his allegations of Director interestedness in the Amended Complaint.  For the purpose of the "validly in litigation" analysis, the Court cannot look to the Amended Complaint to overcome defects in the Original Complaint.  However, even if the Court were to consider the allegations in the Amended Complaint for the purposes of this analysis, the outcome does not change.  The Amended Complaint simply alleges that Shiah, Berini, and Kingsley were negligent in failing to monitor the company's controls and in failing to bring litigation against Palleschi and Lethem.  *See* Am. Compl. ¶¶ 109-119.  These allegations fail for the same reasons addressed previously.  The Amended Complaint further alleges, without factual support, that these three directors were beholden to Sacramone (and, in some cases Shiah) solely because he voted to appoint them to the Board.  *See* Am. Compl. ¶¶ 110, 113, 116.  However, an allegation of "beholdenness," without more, also is insufficient to allege demand futility.  *See Wynn*, 829 F.3d at 1060-61.  Unless the Director to whom Plaintiff alleges others were "beholden" had complete control over the other Directors' continued employment on the Board or their pay, or the Directors are personally connected (like being family members), "beholdenness" is not established and there is no demand futility.  *Id.* at 1059-61.

In short, the Original Complaint did not plead demand futility.  As a result, Barenbaum's claims were not "validly in litigation" prior to his filing the Amended Complaint.  In light of

---

[9] Plaintiff's Original Complaint included more substantial allegations about Director Sacramone's interestedness. However, because none of the other three (or four) directors were interested, the Court need not examine the allegations about Sacramone.  Even if he were interested, the outcome would be the same.

that, "[t]he relevant board [now] is the board as it was constituted when the shareholder[] filed [his] amended complaint." *Weinfeld*, 2016 WL 4487844, at *3. Barenbaum's Amended Complaint does not allege the identity of that Board of Directors, much less plead with particularity any facts about why they would not be able to consider a request to bring litigation. Thus, the Court concludes that Barenbaum has failed to plead demand futility and, therefore, lacks standing to sue derivatively. As a result, the motions to dismiss the Amended Complaint on this ground are granted.

B.    *Plaintiff's Amended Complaint Fails to State a Claim*

Defendants also move, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint on the ground that each of Plaintiff's three causes of action fails to state a claim.[10] *See* New Board Motion at 10-17; Old Board Motion at 4-20; Martin Motion at 8-17. The Court grants the motions to dismiss on the alternative ground of failure to state a claim as against all Defendants other than Palleschi and Lethem.

Plaintiff's Amended Complaint pleads three causes of action. First, Barenbaum asserts a cause of action for breach of fiduciary duty against Defendants Palleschi, Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, O'Hare, Martin, and Lethem. Am. Compl. ¶¶ 120-126 ("Count One"). In particular, Barenbaum alleges that Defendants intentionally or recklessly disregarded their duties and thereby caused FTE to expend corporate funds, in the form of the Notes, and to make misstatements in its 2016-2018 financial statements. Am. Compl. ¶¶ 120-126. Second, Barenbaum asserts a claim for unjust enrichment against Defendants Palleschi, Sacramone,

---

[10] *Pro se* Defendant Lethem has not moved to dismiss the Amended Complaint, but instead answered the Amended Complaint on July 7, 2020. *See* ECF #94. Therefore, the Court will not consider these arguments as applied to him. Moreover, while Defendant Palleschi has joined in the New Board Motion, including the arguments regarding failure to state a claim, *see* Palleschi Joinder at 2, the New Board Motion does not address, much less support, dismissal of Barenbaum's claims against Palleschi. Thus, the Court also will not analyze the claims against Palleschi for an alleged failure to state a claim, or grant dismissal on this ground as to Palleschi.

Ferguson, Ingargiola, Mitchell, O'Hare, Martin, and Lethem.  Am. Compl. ¶¶ 127-32 ("Count

Two").  In this cause of action, Barenbaum alleges that these executives and directors wrongly

received compensation while breaching their fiduciary duties as described in Count One.  Am.

Compl. ¶¶ 127-32.  Both Count One and Count Two are common law claims governed by

Nevada law.  *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d

Cir. 2014).  Finally, Barenbaum asserts a claim under Section 14(a) of the Securities Exchange

Act against Defendants Pelleschi, Sacramone, Ferguson, Ingargiola, Mitchell, and O'Hare.  *See*

Am. Compl. ¶¶ 133-140 ("Count Three").  This claim asserts that those executives and directors

knowingly, recklessly, or negligently signed FTE proxy materials which omitted disclosure of

the fraud outlined in the Amended Complaint.  Am. Compl. ¶¶ 133-140.

 While the Court ordinarily would consider the claims against each Defendant

individually, the deficiencies in Plaintiff's pleading are common to all Defendants.  Thus, the

Court will analyze the sufficiency the claims collectively against all Defendants who have

moved with regard to each cause of action.

  *1. Breach of Fiduciary Duty*

 Under Nevada law, in order to plead a claim for breach of fiduciary duty, a plaintiff must

allege (1) a fiduciary relationship; (2) a breach of the relationship; and (3) damages proximately

caused by the breach.  *See Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (Nev. 2009).  In

the corporate law context, Nevada requires a plaintiff to plead "intentional misconduct, fraud, or

a knowing violation of law" to succeed on a fiduciary breach claim.  *See* Nev. Rev. Stat.

§ 78.138(7)(b)(2) ("[A] director or officer is not individually liable to the corporation or its

stockholders or creditors for any damages as a result of any act or failure to act in his or her

capacity as a director or officer unless it is proven that (a) [t]he director's or officer's act or

failure to act constituted a breach of his or her fiduciary duties as a director or officer; and (b)

[t]he breach of those duties involved intentional misconduct, fraud or a knowing violation of law."). The New Board Defendants, Old Board Defendants, and Martin move to dismiss this claim against them.

The fiduciary duty claims fail for the same reason with respect to each Defendant: the Amended Complaint does not contain factual allegations that any of the Defendants committed a knowing violation of law or intentional misconduct. First, to the extent Barenbaum pleads that groups of the Defendants failed to take actions, *see* Am. Compl. ¶¶ 13-23, 26, 120-32, these statements are improper group pleading and cannot be used to support an allegation of knowing or intentional fiduciary duty breaches for each individual Defendant. *See In re Platinum Beechwood Litigation*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019) ("'Group pleading allows plaintiffs only to connect defendants to statements – it does not also transitively convey scienter.'" (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 406 (S.D.N.Y. 2010)).

Moreover, none of the allegations of a breach of fiduciary duty against the Defendants rises to the level of "intentional misconduct, fraud, or a knowing violation of law" as required for liability. Plaintiff's claim is centered on false statements by the FTE directors and executives regarding the company's financial health and controls. *See* Am. Compl. ¶¶ 124-25. However, as Plaintiff also admits, the primary harm to FTE, *i.e.* the issuance of the Notes, was done "without board approval," because the Defendants primarily responsible for the issuance of the Notes concealed their actions from others. *See* Am. Compl. ¶¶ 39-40. In essence, Barenbaum admits that the harm occurred without the Board's knowledge or consent, defeating any inference, much less particularized pleading, of intentional misconduct by Board members sufficient to state a claim for breach of fiduciary duty for failing to disclose the fraud. Finally, to the extent the fiduciary duty claims are based on allegations that executives and directors negligently failed to

monitor the company's controls, these allegations also fall short because they do not allege intentional wrongdoing as required to state a claim for breach of fiduciary duty. *See Campbell v. Weihe Yu*, 25 F. Supp. 3d 472, 483-84 (S.D.N.Y. 2014) (applying Nevada law dismissing claims based on negligence of internal controls).

      2.     *Unjust Enrichment*

      Count Two of the Amended Complaint attempts to allege a claim for unjust enrichment. However, it fails for substantially the same reasons as Plaintiff's fiduciary duty claim.

      "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Topaz Mut. Co. v. Marsh*, 108 Nev. 845, 856, 839 P.2d 606, 613 (1992) (citing *Nevada Indus. Dev. v. Benedetti*, 103 Nev. 360, 363 n.2, 741 P.2d 802, 804 n.2 (1987)). Barenbaum suggests that Defendants were not entitled to the compensation they received because they were simultaneously breaching their fiduciary duties. Am. Compl. ¶ 129. As noted above, however, because the allegations of fiduciary duty violations fail, so too do the allegations of unjust enrichment predicated upon that alleged breach. *See Octaform Sys. Inc. v. Johnston*, No. 2:16-cv-02400-APG-VCF, 2017 WL 2562110, at *5 (D. Nev. June 12, 2017) (dismissing unjust enrichment claim that incorporated allegations of wrongdoing from another dismissed claim).

      Moreover, Nevada law does not allow a Plaintiff to bring an unjust enrichment claim where the compensation complained of derives from a contract. *See LeasePartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747, 755-56 (1997) ("An action on a theory of unjust enrichment is not available when there is an express, written contract[.]"). Here, Barenbaum's unjust enrichment claim targets the compensation Defendants received as part of the company's incentive plan, which is a contract.

Finally, even on the merits, Plaintiff does not allege an adequate basis for the unjust enrichment claim.  Here too, liability may only be established by alleging "intentional misconduct, fraud, or a knowing violation of law."  *See* Nev. Rev. Stat. § 78.138(7)(b)(2). Barenbaum does not do so, instead relying on the same inapt allegations of negligence that underlie the failed fiduciary duty claim.  Nevada law presumes that compensation to a company executive or director is fair absent evidence to the contrary.  *See* Nev. Rev. Stat. § 78.140(5) ("[I]f the board of directors establishes the compensation of directors pursuant to this subsection, such compensation is presumed to be fair to the corporation unless proven unfair by a preponderance of the evidence.").  Because Barenbaum has failed to allege any facts beyond his conclusory assertions that Defendants' compensation was unfair, the claim must be dismissed.

       *3.*      *Section 14(a) Claim*

Count Three asserts a claim for violation of Section 14(a) of the Securities Exchange Act. *See* Am. Compl.  ¶¶ 133-140.  In particular, Barenbaum charges that Defendants misrepresented FTE's financial situation in the company's proxy materials.  Am. Compl.  ¶¶ 136-137.

To state a claim under Section 14(a) of the Securities Exchange Act, a plaintiff must allege that "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiff['s] injury, and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."  *Bond Opportunity Fund v. Unilab Corp.*, 87 Fed. App'x 772, 773 (2d Cir. 2004). Claims for violation of Section 14(a) must be pleaded with particularity.  *See* 15 U.S.C. § 78u-4(b)(2).  Unlike other securities law violations, a claim for violation of Section 14(a) can be predicated on allegations of negligence.  *See Gruss v. Curtis Publ'g Co.*, 534 F.2d 1396, 1403 (2d Cir. 1976) (Negligence is "the standard of culpability we have held applicable as a minimum in damage suits for violations of the Proxy Rules."); *accord DeKalb Cty. Pension Fund v.*

*Transcocean Ltd.*, 817 F.3d 393, 409 (2d Cir. 2016) ("[M]yriad decisions hold[] that liability can

be imposed under Section 14(a) for negligently drafting a proxy statement." (cleaned up)).

Plaintiff pleads that FTE's 2018 Proxy Statement was materially misleading because it

included false statements regarding the disclosure of related-party transactions and the

company's accounting for the year. *See* Am. Compl.  ¶¶ 46-48, 58.  While the specifics of the

purported accounting issues are not alleged, Plaintiff states that the misstatement could include

any description of the company's finances drawn from a financial statement that was later

withdrawn.  Courts routinely find that these kinds of misstatements about accounting are material

to investors.  *See In re SLM Corp. Secs. Litig.*, No. 08-cv-01029 (WHP), 2012 WL 209095, at *6

(S.D.N.Y. 2012) (collecting cases).

However, Plaintiff's Section 14(a) claims nonetheless fail because he does not adequately

allege causation.  Specifically, Barenbaum does not explain how the false statements in the 2018

Proxy Statement, as opposed to the underlying defects themselves, are the cause of any injury to

FTE.  The Court might agree, for example, that the company was harmed by the alleged fraud

and resulting misstatements in FTE's audited filings, such as their Annual or Quarterly Reports.

But that is not the claim here.  Barenbaum instead points to the proxy statements in support of re-

election of the FTE Board of Directors in December 2018.  *See* Am. Compl. ¶¶ 136-38.  To

sustain a Section 14(a) claim, Barenbaum must allege that "the proxy solicitation itself," and not

a "particular defect" in the proxy materials, caused the harm.  *Unilab Corp.*, 87 Fed. App'x at

773.  In other words, but for the proxy solicitation, the harm to FTE would have been avoided.

Plaintiff attempts to do so by alleging that the proxy solicitations led to the re-election of the

Board, who in turn "continued [to violate] their fiduciary duties and [received] incentive

compensation awards."  Am. Compl. ¶ 137.  However, Plaintiff never alleges that electing a

different Board would have prevented the alleged harms to the company that Plaintiff seeks to

redress.  Indeed, such an allegation would be at odds with Plaintiff's own allegations that the fraud on FTE was accomplished without the Board's knowledge or consent.  Am. Compl. ¶¶ 39-40.  Indeed, this supports an inference that the proxy solicitation and vote on the Board of Directors had no impact at all on the harm FTE suffered.  At a minimum though, the Court cannot find that the proxy materials were an "essential link" in the alleged harm to FTE. Accordingly, the Section 14(a) claim is dismissed for failure to state a claim.

> C.    *Dismissal Of The Entire Complaint With Prejudice Is Appropriate*

The New Board and Old Board Motions specifically request that the Court dismiss Plaintiff's Amended Complaint with prejudice.  *See* New Board Motion at 19; Old Board Motion at 21.  Nominal Defendant FTE joins in that request for relief and seeks dismissal with prejudice on the ground that Plaintiff is not entitled to maintain a derivative action on FTE's behalf.  *See* FTE Joinder at 2-3.  Dismissal with prejudice is appropriate here.  Plaintiff previously was given leave to amend the Original Complaint in response to the first round of motions to dismiss that were specifically addressed to Plaintiff's failure to plead demand futility and failure to state a claim.  *See* ECF #48.  At that time, Judge Engelmayer, to whom this case was originally assigned, warned Plaintiff that "[n]o further opportunities to amend will ordinarily be granted." *Id.*  None of Defendants' arguments in their motions to dismiss the Amended Complaint are novel; rather, they mirror the arguments made regarding the Original Complaint.  As a result, Plaintiff was on notice of the alleged deficiencies when he amended his complaint, and particularly in light of the Court's prior warning, the Court need not grant him a second opportunity to fix them.

Dismissal with regard to all Defendants is also appropriate.  As noted above, failure to allege demand futility is a defect in Plaintiff's standing to bring a derivative action.  *See Shoen*, 122 Nev. at 641 ("A shareholder's failure to sufficiently plead compliance with the demand

requirement deprives the shareholder of standing[.]").  While Defendant Lethem has not moved to dismiss the Amended Complaint, lack of standing was raised by the all of the motions to dismiss and joinders thereto as a basis to dismiss the Amended Complaint in its entirety. Standing is also an issue the Court can raise *sua sponte*.  *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").  Since Plaintiff has had an opportunity to respond to this argument as it relates to the Amended Complaint, dismissal of the action in its entirety is warranted, including the claims against Lethen, notwithstanding that he has not filed a motion to dismiss.

**CONCLUSION**

After a series of revelations of corporate misconduct by executives at FTE Networks, Inc., Plaintiff Ephraim Barenbaum, IRA, brought this action derivatively to recover on behalf of the company for that wrongdoing.  In addition to the responsible actors, Barenbaum sued certain members of the FTE Board.  However, Barenbaum's Amended Complaint fails to allege that demand on the now-existing FTE Board of Directors would have been futile, as he must, to have standing to bring a derivative case.  As a result, the Amended Complaint is dismissed with prejudice.

Alternatively, all claims against Defendants Sacramone, Shiah, Ferguson, Ingargiola, Mitchell, O'Hare, Martin, Kingsley, and Berini are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Court also grants Plaintiff's motion for judicial notice as set forth herein.

In summary, the Court grants the motions to dismiss at ECF #59, 63, and 66 with prejudice and grants the motion for judicial notice at ECF #99.  The Clerk of Court respectfully is requested to close the case.


**SO ORDERED.**


**Date:  September 30, 2020**            _Mary Kay Vyskocil_
**        New York, NY**                 **MARY KAY VYSKOCIL**
                                         **United States District Judge**

29